[Civ. No. 14601. Second Dist., Div. Two. Nov. 29, 1944.]

Estate of JOHN I. BOYER, Deceased. ALICIA BOYER, Appellant, v. HARLAN V. BOYER, Respondent.

Denio, Hart, Taubman & Simpson for Appellant.

George W. Trammell and Kenneth A. Davis for Respondent.

MOORE, P. J.—The question for decision is whether the evidence supports the finding that the estranged wife without the knowledge or consent of decedent husband fraudulently destroyed his last will and testament.

Decedent, John I. Boyer, was married to appellant on February 26, 1938. They were separated December 15, 1941; she sued him for support and thereafter lived separate and apart. On June 5, 1942, a decree for the support and maintenance of Alicia was made by the superior court requiring the testator to pay his wife seventy dollars monthly and certain expenses for the maintenance of her apartment. Twenty-five days following such decree decedent executed a will which expressly excluded appellant from all participation in his estate. After the separation testator resided in and had his office on the ground floor of an apartment building in Long Beach while appellant maintained an apartment on the fifth floor of the same building. During all of the time of their estrangement and residence in the same building appellant retained a key to her husband's office and had access thereto in his absence. On the third of February, 1943, testator entered a hospital where he died on February 21, 1943.

Upon proof of the due execution of the will and of the circumstances surrounding its disappearance the court found (1) that at the time of testator's entry into the hospital his will was in his office where he had placed it for safe-keeping; (2) that it had not been revoked by testator in whole or in part; (3) that during his confinement in the hospital, without his knowledge or consent, or promptly after his death, appellant entered his office and fraudulently destroyed the will. Basing her argument primarily upon the fact that there

was no witness who testified explicitly to having witnessed the destruction of the will and upon the presumption of her honesty and fair dealing, she now contends that the evidence is not sufficient to support the finding of the will's fraudulent destruction.

In following our discussion it is to be borne in mind that (1) in our review of the evidence all conflicts must be resolved in favor of the judgment; (2) all legitimate inferences must be indulged to uphold the finding; (3) the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence which will support the finding, and (4) the court has no power to substitute its deductions for those of the trial court when different inferences may reasonably be drawn from the facts proved. (*Crawford* v. *Southern Pac. Co.*, 3 Cal.2d 427 [45 P.2d 183]; *Estate of Bristol*, 23 Cal.2d 221 [143 P.2d 689].)

In the light of those principles we find no difficulty in concluding that the evidence warrants the finding of appellant's fraudulent destruction of the will. In deriving this conclusion we are not restricted to a consideration of the actual behavior of appellant as detailed from the witness stand. Other factors are conspicuous and luminous. The relationship of appellant to the testator is of prime importance. Where a testator was amiably disposed to all of his legal heirs and none of them was unfriendly to him, it would be more reasonable to conclude that he would have destroyed his will with intention of revocation, if its provisions had favored some as against others. But where one of the heirs was unfriendly and the testator had a bitter disdain toward her and had excluded her from all benefits under his will, it is not reasonable to suppose that he himself would have destroyed his will and thereby leave the inimical heir in a position to participate in his estate on equal terms with those he loved. After the entry of judgment against the testator for the support of his estranged wife they never lived together again, but on the contrary testator's attitude toward appellant was such that he declined ever to see her at all.

The background of the controversy contributes much to an understanding of the judgment. While appellant had instituted legal action against decedent in December, 1941, she had no contacts with him prior to his death. Promptly following his decease, although she knew that he had sisters living in Los Angeles, she stealthily entered his office, pro-

cured clothing for his burial and there "wondered if John has papers in his office and his insurance papers." She removed all documentary contents from his desk and kept them in her own apartment overnight. She testified that she did not examine any of them or look at them until after she had delivered them on the following day to her counsel. Those delivered included the insurance policies and a copy of his will. Three days later she employed a locksmith to change the lock on the office door and remarked to him "that somebody had been in there before she had." She qualified as administratrix of the estate and filed a verified inventory on June 24, 1943, listing as the only assets of the estate his furniture and equipment although she had found in his office $3,300 in cash and securities on June 7. In her testimony concerning the cash and securities she evinced a decided peeve at the discovery because decedent had "sat in court and said he made $175 a month."

The testimony furnished substantial support for the finding of the existence of the will at the time of the testator's decease. Attorney Trammell testified to its execution in June 1942. Near Christmas of the same year he saw it in the desk of decedent who stated that he had it there and had been postponing its removal. In the summer of 1942 in conversation with the witness Butterfield, a friend since childhood, testator stated that "he had fixed it up that my own sisters are taken care of. I am a good deal like you. You told me you have things arranged for your sister." With the witness Fisher, an insurance agent whom he had known for 50 years, he had a conversation respecting the beneficiary of a $10,000 policy of life insurance of which he had at one time made his wife the beneficiary. In the summer of 1942 at the request of the testator Mr. Fisher substituted the names of testator's sisters as beneficiaries of the insurance policy on a form he had provided. The form was filled and the instrument was signed by testator and witnessed by Fisher. In a conversation of the two men during Dr. Boyer's last illness he told the witness that he wished to pay a premium on his insurance; that the policy was in his office; that the form containing his change of beneficiary was with the policy; that he had neglected to send the policy and the completed form to the company. To his friend he then repeated his declaration that everything was set up so that "his sisters would get everything possible;

that he felt alone in the world,'' and like Mr. Fisher had made a will giving all to his sisters. Such declarations by one who felt the approach of final dissolution to a familiar friend were competent and significant proof that he had entertained no intention or desire to revoke his will. (79 A.L.R. 1498; *Estate of Sweetman,* 185 Cal. 27 [195 P. 918]. See *Estate of Ross,* 199 Cal. 641, 647, 651 [250 P. 676]; *Estate of Duffill,* 14 Cal.App.2d 284 [58 P.2d 185].)

The witness Christine Lorgion, a nurse in the hospital, attended testator during his last illness. She was with him during most of the daylight hours. In the course of his conversations with her he stated that he had two sisters in Los Angeles and wished them to have charge of his body and to have all of his personal belongings and his property.

The evidence, if believed, clearly established that the testator had no desire to confer benefits of his estate upon appellant. One week before he entered the hospital he consulted his attorney with reference to obtaining a divorce in Nevada. Upon being advised of the illegality of a Nevada decree based upon six weeks' residence there, he stated that he might as well live and practice in Nevada. During his last illness he refused to see appellant and threatened to leave the hospital if she should be admitted to his bedside.

 Imbued with a bitterness of feeling arising out of her belief that she had been worsted in the matter of support money she was tempted to thwart the testator's will on being confronted with the secret opportunity to become possessed of all his worldly goods. In view of that probability and of all the circumstances surrounding the disappearance of the will, the court was warranted in finding that she had fraudulently destroyed that document. (*Estate of Bristol,* 23 Cal.2d 221 [143 P.2d 689].) It was not without authority for its judgment. (Code Civ. Proc., § 1963, subd. 32.) Two recent decisions whose facts closely parallel those before us demonstrate the approved course of judicial logic. In the *Estate of Thompson,* 44 Cal.App.2d 774 [112 P.2d 937], the decedent wife had placed her will in her safety box in the bank's vault never to see it again. While there was no direct evidence of her husband's having entered the deposit box, he had access thereto and the opportunity was at hand. The will excluded the husband from sharing in the estate of his wife from whom he was separated. They had agreed upon a property settle-

ment, and the will provided to his disadvantage. The finding that he did destroy the will was held to be ''based upon a factual inference'' and could not be supplanted by an opinion of the reviewing court. (See *Estate of Dean,* 62 Cal.App.2d 418 [144 P.2d 849].)

In the case of Mrs. Boyer, she had been disinherited by the will of her husband; she had been living on a modest allowance from her husband's earnings for which she deemed herself aggrieved. Although a gulf of enmity separated them, she not only entered his office after death had barred him, but she confessedly removed all of the valuable contents from his desk without moral justification. It was no abuse of judicial ratiocination to infer that she removed also the original will and destroyed it.

The judgment is affirmed.

Wood (W. J.), J., and McComb, J., concurred.