[Civ. No. 17049.   Second Dist., Div. Two.   Nov. 30, 1949.]

Estate of THOMAS J. REYNOLDS, Deceased. T. EDWARD KENNEDY et al., Appellants, v. MARY VIRGIE BEUSTAD, Respondent.

Bailey & Poe and Henry C. Rohr for Appellants.

J. M. Clements for Respondent.

WILSON, J.—From a judgment and order dismissing their petition to revoke after probate the purported lost will of Thomas J. Reynolds, deceased, and confirming the order admitting such will to probate, petitioners appeal.

The sole question to be determined is whether the proponent

of the will has met the statutory requirements for proving a lost will.

Section 350 of the Probate Code provides: "No will shall be proven as a lost or destroyed will unless proved to have been in existence at the time of the death of the testator, or shown to have been destroyed fraudulently or by public calamity in the lifetime of the testator, without his knowledge; nor unless its provisions are clearly and distinctly proved by at least two credible witnesses . . ."

There is no question of fraud or public calamity involved in the instant case. The evidence discloses that Mary Virgie Beustad, the proponent of the purported lost will and the sole beneficiary thereunder, went to live with decedent as his housekeeper in 1938 and remained with him until his death. There was an agreement between them that he would will his property to her as compensation for her services. Some time early in May, 1943, decedent executed a holographic will bequeathing all his property to respondent. He gave the will to her and she placed it for safekeeping in her dresser, in a box with other personal things, in the same drawer where decedent kept his rent receipt book. Respondent testified she was unable to find the will when she looked for it the day following the testator's death and the will has never been found.

Appellants contend that the purported will does not satisfy the requirements of section 53 of the Probate Code in that there is no evidence showing the date of the will other than it was dated in May, 1943. The court inserted the date May 1st. One witness testified that the will was dated; that as near as he could remember the date on the will "was close to May 1st; that it had a date on it." Respondent testified that the will was dated and signed by decedent. This evidence is sufficient to support the finding that the will was dated.

The fact that neither witness could recall the exact day of the month appearing in the date does not render the instrument invalid as a holographic will.

Appellants further contend that the proponent failed to establish that the will was in existence at the time of the testator's death. They assert that since the testator had access to the document the presumption arises that he destroyed it *animo revocandi* and that there is no substantial evidence to overcome the presumption. Witness Cauthen testified that the testator had told him many times that when he died he wanted Mrs. Beustad to "have a roof over her head";

that on the Friday before his death, which occurred on Sunday, decedent was talking to him about painting the house and at that time he held up an envelope and asked the witness if he knew what it was, stating: "This is Virgie's will. When I pass on this will give her the houses." Witness Brooks testified that decedent had talked to him many times about his will; that "he said he owed it to her; that he felt better that he had made a will in her favor." Both witnesses testified the testator said that after the death of his mother and brother he had no relatives left. There is no evidence of any change in the attitude of the testator toward Mrs. Beustad. While it appears from the testimony of witness Cauthen that the testator had the will in his possession on the Friday before his death on Sunday, Mrs. Beustad testified that about 6:30 on that evening before leaving the house she took the envelope out of the drawer, lifted the flap and saw that the will was inside, and replaced the envelope in the drawer; that upon prior occasions when leaving the house she had secreted the will in various places in the house. Although the testator had access to the will, there is no evidence that he had it in his possession after the time Mrs. Beustad last saw it. The relationship between the testator and Mrs. Beustad was at all times friendly and cordial and he had given the will to her for safekeeping. The evidence is sufficient to overcome the presumption that the testator had destroyed the will with the intention of revoking it and to support the finding that it was in existence at the time of his death.

In *Estate of Boyer*, 67 Cal.App.2d 83, 86 [153 P.2d 793], the court held that the testimony of the attorney who testified to the execution of the will and that he saw it on the testator's desk two months before his death, the testimony of an insurance agent that he substituted the names of the testator's sisters as beneficiaries of an insurance policy and evidence that during his last illness the testator repeated to a friend his prior declaration that he had made a will giving all to his sisters was competent proof that he had entertained no desire to revoke his will. While proof that the will was not revoked by the testator is not proof that it was in existence at the date of his death it is a patent circumstance tending to establish that fact. (*Estate of Moramarco*, 86 Cal.App.2d 326, 337 [194 P.2d 740].)      As stated by the court in *Estate of Moramarco, supra,* where circumstances strongly indicate the testator did not destroy the will and there is no evidence that it could have been destroyed by anyone who would have

profited by its destruction no great amount of evidence should be required to support a finding that it was not destroyed. If there is no evidence indicating the will was destroyed other than the presumption the testator destroyed it with the intention of revoking it, and there is substantial circumstantial evidence tending to prove it was not destroyed, the court may reasonably find that the will was in existence at the time of the testator's death. ▆ Furthermore, when two or more inferences can be reasonably deduced from the facts the reviewing court cannot substitute its deductions for those of the trial court. (*Estate of Bristol,* 23 Cal.2d 221, 223 [143 P.2d 689] ; *Estate of Pohlmann,* 89 Cal.App.2d 563, 567-8 [201 P.2d 446].)

▆ Appellants call attention to the statement of the court that "this is a pretty weak case." The statement referred to was made by the court when the will was admitted to probate, where the only question before the court was whether the proffered instrument was the will of decedent; it was not made at the time of the hearing on the contest of will after probate where the evidence was stronger, witnesses testified who were not present at the former hearing and all witnesses were thoroughly cross-examined.

▆ Finally, appellants assert that the provisions of the will were not proved by two credible witnesses since one of the witnesses was the sole beneficiary. It is their contention that since section 51 of the Probate Code provides that devises to a subscribing witness are void "unless there are two other and disinterested subscribing witnesses to the will" Mrs. Beaustad, who is the sole beneficiary, cannot qualify as a credible witness. Section 51 of the Probate Code is specific and relates solely to *devises to subscribing* witnesses. It does not relate to their qualification as witnesses. ▆ Furthermore, a gift to a legatee by a holographic will is not invalidated by his signing the document as a witness. Probate Code, section 51 (former Civ. Code § 1282), has no application to holographic wills. (*Estate of Zeile,* 5 Cof. 292.) ▆ Section 350 of the Probate Code relates to the manner in which a lost will may be proved and contains no reference to an attesting or a subscribing witness. It has no connection whatsoever with section 51. Section 1879 of the Code of Civil Procedure provides that, with certain exceptions not involved herein, "neither parties nor other persons who have an interest in the event of an action or proceeding" are excluded as witnesses

but their credibility may be drawn in question. In the Zeile case the court said: ''The history of the disability of a witness to a will to take as a legatee or devisee thereunder, as having its basis in the common-law rule excluding an interested witness from testifying, leading to the result of invalidating many wills until legislation in England and in this country altered the situation by invalidating the gift and thus restoring the competency of the witness—is a familiar one . . . The next step in legislation and decision was to remove the witness' disability to receive the gift provided the will could be proved by other competent evidence.''

In *Re Dalbey's Estate*, 326 Pa. 285 [192 A. 129], the court held that the decedent's widow, who was one of two witnesses called to prove the contents of a lost will and substantially the sole beneficiary under it, was not disqualified as a witness under the statute which in accord with the more modern viewpoint, said the court, recognizes the probative value of such testimony as outweighing the danger of perjury and limits the effect of the witness' interest to the question of credibility. We find nothing in the statutes of California which disqualifies the proponent as a witness because she is the sole beneficiary. The question of her credibility is for the determination of the trial court.

The cases cited by appellants are not to the contrary. In *Re Kuehnel's Will*, 52 N.Y.S.2d 617, the will was an unnatural one since it disinherited the widow and divided the estate between the testator's two brothers. The evidence with regard to the wife's having taken the will was held insufficient to overcome the presumption that the will had been destroyed by the testator with the intent to revoke it, or to establish the fraudulent destruction by the widow. In *Re Beckerle's Will*, 46 N.Y.S.2d 271, decedent's daughter offered for probate a copy of a will alleging the original had been lost or destroyed. Her testimony as to declarations by decedent made to her was held to be incompetent and inadmissible to establish the existence of the will at the time of death because the witness would gain by admission of the proffered instrument to probate. In *Keery* v. *Dimon*, 91 Hun. 642 [37 N.Y.S. 92], the decedent executed the purported lost will in 1882 and the last time there was any satisfactory evidence it was in existence was in 1885. The testator drew another will in 1891 which was substantially the same as the one sought to be established as a lost will and on which he subsequently obliterated the signatures. The death of the testator did not occur until 1893.

The evidence was held to be insufficient to establish that the alleged lost will was in existence at the time of the testator's death.

In the instant case two disinterested witnesses testified to the fact that the testator had declared that he had no relatives. One of these witnesses testified the testator had asked him to draw a will for him, stating that he wanted to will his property to a woman by the name of Virgie; that she was living at his house as a housekeeper and he wanted to will his property to her because of an agreement he had with her "that she would get his property if she took care of his property or did his housekeeping until he died." This witness further testified that he told decedent he was not a lawyer and could not draw a will but that he had a will which had been made out by a lawyer; that he would copy it and if decedent wanted to take a copy and write it out on plain paper and date it and sign it, he could do so; that he gave decedent a copy of his will and decedent showed him the will which he made in which he bequeathed all his property to Virgie Beustad; that the will was in the handwriting of decedent; that many times thereafter decedent told him he was glad he had made a will in favor of Mrs. Beustad. The other disinterested witness testified to the declarations of decedent on the Friday before his death as hereinabove related. ■ Furthermore, his will was a natural one for him to make since (1) it was in fulfillment of his agreement with Mrs. Beustad, (2) her services as his housekeeper and her attention to his property over a period of years furnished a valid consideration for the bequest, (3) according to his declarations he had no relatives. His belief that he was without kin is substantiated by the fact that there is no evidence that any of the contestants ever visited him or made themselves known to him; none of them testified at the trial.

Judgment and order affirmed.

Moore, P. J., and McComb, J., concurred.