foreign countries, or which have transacted business in the state for a period of three years or upwards, where the business shall be continued by some or any of the partners, their assigns or appointees. In cases of a dissolution by the death of one of the partners, I think it is quite plain that it was the legislative intent that the right to the continued use of the old firm name should pass to and be controlled by the survivors. In the case of Blake v. Barnes, supra, this same question was quite elaborately discussed by Mr. Justice Barrett, who came to the conclusion "that, while the good will is concededly an asset, the right to continue the business under the old firm name belongs to the surviving partners."

While I am of the opinion, as I have said, that the facts upon which this application is based are not sufficient to justify the appointment of a receiver, I think that the plaintiffs are entitled to have the affairs of the partnership immediately wound up, its assets disposed of, and a distribution made. I am therefore disposed, in denying the motion, to grant leave to renew the same upon additional proofs, should there be any unreasonable delay in the matter. Ordered accordingly.

---

### KEERY v. DIMON et al.

(Supreme Court, General Term, First Department. December 18, 1895.)

LOST WILLS—ACTION TO ESTABLISH—EVIDENCE.

In an action to establish a lost will, alleged to have been executed in plaintiff's favor nine years before testator's death, a witness testified that he drew the will, was one of the two subscribing witnesses, and that he placed the will in his safe; but his testimony was uncertain as to when he last saw it. There was no direct evidence that it was ever in testator's possession afterwards, but it appeared that after the making of the will said witness held several important offices, and had a partner who was intimate with testator, and that testator was many times in their office. About two years before his death, testator drew up a will, substantially a copy of the lost will, and afterwards obliterated from it plaintiff's name, and the signatures of himself and the attesting witnesses. *Held*, that the evidence was not sufficient to establish the will.

Appeal from special term, New York county.

Action by Martha Keery against John F. Dimon and others to establish an alleged lost will of Stephen C. Dimon in favor of plaintiff. The complaint was dismissed on the merits, with costs, and plaintiff appeals. Affirmed.

The opinion of Mr. Justice INGRAHAM, at special term, is as follows:

The plaintiff in this action seeks to divert all of the property of the deceased from his relatives, and appropriate it to her own use, by establishing a will which is not produced, and which is alleged to have been executed within a few days of the 30th of September, 1884; and the last time there is any satisfactory evidence that this will was in existence was about May 20, 1885, when Mr. Morgan swears he took it out of his drawer, and put it in a safe that he had purchased about that time. It is true that Mr. Morgan says he subsequently saw the envelope in which he alleges that he placed this will in his safe, and says he thinks he saw it there as late as 1892; but he is not positive about it, and, as he had then no particular object in looking

for the will, I do not think that such recollection is satisfactory evidence of its existence at that time. After the death of the alleged testator, the will disappeared, and all attempts to trace it have proved fruitless. There were two subscribing witnesses to the will. One was Mr. Morgan, who drew it; and the other, Roy W. Smyth, who was then a clerk in the employ of Mr. Morgan. Smyth was not produced as a witness, as he has since disappeared, and his whereabouts could not be ascertained. The only other person that ever saw this will was the plaintiff, who testified that on the 12th day of July, 1884, the alleged testator being present, she read the will. And it is upon the testimony of Mr. Morgan and the plaintiff that it is sought to prove the contents of this paper. To entitle the plaintiff to succeed in this action, plaintiff must prove that the will was in existence at the time of the testator's death, or was fraudulently destroyed in his lifetime; and, second, its provisions must be clearly and distinctly proved by at least two credible witnesses. I think the plaintiff has failed in establishing either of these propositions. I have no doubt of the correctness, in the main, of Mr. Morgan's story,—that he drew a will, substantially the same as testified to by him, in 1884; that he delivered it to the testator; that it was subsequently returned to him for safe-keeping; and that he did keep it in his possession for some time. All this, however, comes far short of proving that the will was either in existence at the time of the death of the testator, in 1893, or that it had been fraudulently destroyed during the lifetime of the testator. During this period Mr. Morgan has held several important public offices. He had a partner who appears to have been intimate with the alleged testator, and the testator was many times in his office. It is much more probable that, during one of the many visits of the alleged testator, he obtained possession of the will, either from Mr. Morgan, and that circumstance escaped Mr. Morgan's recollection, or from Mr. Morgan's partner in his absence. At any rate, the testimony is not clear that this instrument remained in Mr. Morgan's possession, and its disappearance is certainly most remarkable, if it was not given to the alleged testator. Mr. Morgan's testimony as to the declarations of the testator would tend to show that he thought the will was in Mr. Morgan's possession; but he seems to have been a peculiar individual, and I do not think that statements of that kind should be considered as establishing by clear proof the existence of the will on the death of the testator, or its fraudulent destruction prior to that time; and his declarations are very seriously weakened by the production of the obliterated will.

It seems that on or about the 23d day of October, 1891, the testator went into the safe-deposit company, in which he hired a vault, and there wrote out a will, which was, in substance, a copy of the one that Mr. Morgan drew for him, in that he left all his property to the plaintiff, and appointed her executrix. Just why the testator should have prepared this will himself, if he supposed that a will of substantially the same purport was in Mr. Morgan's possession, ready to be produced at his death, is not clear. The fact of his executing such instrument, under the circumstances, would tend strongly to show that the prior will drawn by Mr. Morgan, and which was executed in 1884, was then in his possession, or had been, some time prior to that, destroyed; and the subsequent obliteration of the signatures upon that will would tend to show that, at the time the obliterations were made, he had changed his mind as to the disposition he should make of his property. The testator could have had no possible motive in destroying this will, if he had supposed the prior will was in existence, and ready to be proven in case of his death. The execution in October, 1891, and the subsequent obliteration of this last will, seems to me most conclusive evidence that the testator did not then understand that a prior will was in existence, giving the property to the plaintiff.

But the statute also requires that the provisions of a will should be clearly and distinctly proved by at least two credible witnesses. I have no doubt as to the credibility of Mr. Morgan, but the plaintiff in the action stands in an entirely different position. It is somewhat doubtful whether her testimony is not open to the objection that it is in violation of the prohibition contained in section 829 of the Code. The exhibition to her of the will by the deceased, and her reading it in his presence, might well be part of a personal transac-

tion between them; and, if not in violation of the letter, it certainly is in violation of the spirit, of this provision of the Code, which seeks to prevent a person claiming a part of the estate of a dead man from establishing the facts necessary to sustain his claim by his own testimony. The plaintiff is the sole person interested in the establishment of this will; by it she will receive a large sum of money; and it would be extremely unsafe to allow a person standing in that position to testify to facts necessary to entitle her to a judgment against the estate, when the lips of the testator are closed by death, and hence unable to contradict or qualify the statements that she has made. The statute requires that the contents of the will shall be proved by two credible witnesses; and to accept the testimony of one to whom the property would go by the will, as that of a credible witness to the contents of the will, would be to overthrow one of the safeguards that the law has established for the prevention of claims of this kind, based upon the testimony of those interested in enforcing the claim. I have examined the cases cited by the counsel for the plaintiff, but none of them is applicable to the question presented here, except the case of Schultz v. Schultz, 35 N. Y. 653. That case goes a long way towards establishing the sufficiency of the proof as to the existence of this will at the time of the testator's death. In that case, however, the will was executed less than two years prior to the time of the testator's death. It was thus comparatively a short time before the testator's death that the will was in possession of the custodian, and the court states that there is not a scintilla of evidence or circumstances to show that the testator ever had possession of the will after its execution and delivery to the custodian. In this case, however, the long time that elapsed between the time of the delivery of the will to Mr. Morgan and the death of the testator, the absence of any satisfactory proof of the existence of the will from the time it was delivered to Mr. Morgan to the time of the testator's death, and the fact that the testator made another will, making substantially the same disposition of the property, which he subsequently destroyed, all tend to cast a doubt upon the fact that the will was in existence at the time of the testator's death, and there is positively no evidence that it was ever fraudulently destroyed. I do not think the court is justified in diverting a large sum of money from those legally entitled to it, by allowing a lost will to be proved, except upon the clearest and most satisfactory evidence of the existence of the will at the time of the testator's death. And the testimony in this case falls short of what I consider necessary to establish such a will. There should therefore be judgment for the defendants, with costs.

Argued before VAN BRUNT, P. J., and O'BRIEN and FOLLETT, JJ.

Theodore H. Friend (Wheeler H. Peckham, of counsel), for appellant.

William R. Wilder, for respondent Charles L. Dimon, individually and as administrator.

Abner C. Thomas, for respondent Jacob S. Dimon.

Anderson, Howland & Murray (Henry H. Anderson, of counsel), for respondents Charlotte H. Dyer and John F. Dimon.

Miller & Miller (J. F. Miller, of counsel), for respondent Mary H. Bell.

James B. Ludlow, for respondent Frederic D. Philips.

PER CURIAM. Judgment affirmed, with costs, on opinion of special term.