In the matter of the settlement of the estate of HENRIETTA COOPER, deceased.

[Decided December 4th, 1923.]

1. A specific legacy is adeemed when the particular thing given is wholly lost or destroyed, or is disposed of by the testator during his life, or is so altered by him in its form as to indicate a change of testamentary purpose on his part, an intentional partial revocation of the will.

2. A committee of a lunatic is a mere conservator of his ward's estate, and his possession of that estate vests him with no power. either intentionally or unintentionally, to change his ward's duly expressed purposes respecting the disposition of his estate after his death.

---

On appeal from a decree of the prerogative court.

*Mr. Osiris D. McConnell* and *W. H. Kirkpatrick* (of the Pennsylvania bar), for the appellant.

*Mr. William D. Lippincott,* for the respondents.

The opinion of the court was delivered by

GUMMERE, CHIEF-JUSTICE.

This is an appeal from a decree of the prerogative court, affirming an order of distribution made by the orphans court of Camden county in the matter of the settlement of the estate of Henrietta Cooper, who died, leaving a last will and testament. But a single question is involved in the appeal,

and that is whether a legacy given by the seventh item of the will, by the terms of which the testatrix gave and bequeathed to her two sisters, Ann N. Cooper and Mary Adelaide Jacoby, her (testatrix's) distributive share in the estate of her great-uncle, Levi Nice, deceased, and her distributive share in the estate of her great aunt, Ann Nice, also deceased (each of whom while living was a resident of the State of Pennsylvania), had been adeemed in her lifetime.

The will of Henrietta Cooper was made and executed on the 24th of April, 1906. Subsequently, and on October 11th, 1907, she was adjudged a lunatic by the court of chancery. She died in November, 1914, never having been restored to her right mind, and her will was duly probated. After she had been adjudged a lunatic by the court of chancery an ancillary committee was appointed of so much of her estate as had its *situs* in Pennsylvania, the committee being one Adamson. In due course the estate of Levi Nice, and that of Ann Nice, were settled, and the moneys into which the distributive shares of Mrs. Cooper therein had been converted were paid over by the legal representatives of those estates to Adamson, the ancillary committee. Upon receiving these moneys, the latter mingled them with other funds which he held belonging to the estate of the lunatic, and after her death paid over the whole amount in his hands, in bulk, to her executors. When the time for settlement of her estate arrived, the question arose whether the legatees named in the seventh item of the will were entitled to have paid to them out of the estate moneys equal to the amount of the legacy given to them thereby, or whether that legacy had been adeemed by the act of Adamson in accepting from the representatives of the two Nice estates the moneys due to his ward as her distributive shares of those estates, or by his subsequent act of commingling those funds with other funds in his hands belonging to the lunatic; or whether the legacy still remained an outstanding obligation in the making of the distribution. The two legatees contended that their legacy was still in force. The residuary legatee insisted that it had been adeemed, and that he was entitled to have all of the moneys

paid over by Adamson to the testatrix's executor delivered to him as a part of the residuary estate. The orphans court held that there had been an ademption by the act of Adamson in accepting from the representatives of the Nice estates the distributive shares of the testatrix therein, and directed the distribution of her estate accordingly. On appeal from this part of the order for distribution the prerogative court reached the same conclusion. The two legatees have appealed from the decree of affirmance.

The theory upon which the decision of the orphans court rests is that the legacy is specific; that, therefore, the payment of her distributive shares by the representatives of the estates of her greatuncle and greataunt, respectively, if made to Mrs. Cooper personally, would have operated as an ademption thereof; and that, this being so, the same result must follow from the payment of the moneys into which these distributive shares had been converted to, and their reception by, the committee of her estate. The same theory was adopted by the prerogative court in disposing of the appeal to it.

One of the points raised on the argument on behalf of the appellant is that such a legacy as that contained in the seventh item of the will of the testatrix is not specific, but general. We do not find it necessary to determine the soundness of this contention, however, and, for the purpose of disposing of this appeal, assume that the theory of the prerogative court, that the legacy in question is specific, is sound.

In the case of *Morse* v. *Converse, 113 Atl. Rep. 214,* a decision of the supreme court of New Hampshire, Parsons, chief-justice, in discussing the doctrine of ademption, thus defines its scope: "A legacy which is specific is adeemed when the particular thing given is wholly lost or destroyed; or is disposed of by the testator during his life; or is so altered by him in its form as to indicate a change of testamentary purpose on his part, an intentional partial revocation of his will." This, in our opinion, is an accurate statement of the law of ademption and of its limitations. In the present case the legacy was a gift of distributive shares, then due, but not presently payable to the testatrix. These shares

*95 N. J. Eq.*                In re Cooper.

were her absolute property, although the amount thereof had not yet been determined and could not be until after the payment of debts and the expenses of settlement by the legal representatives of the Nice estates. The mere delivery to her by those representatives of her distributive shares in the shape of banknotes or specie and her acceptance would produce no change in the identity thereof. They would remain the same banknotes or the same specie after their delivery to her as they were prior thereto. Nor would their reception by her be any indication of a purpose on her part to cancel the legacy given by the seventh item of her will—to revoke to that extent the testamentary disposition of her property, and to transfer the subject of the specific legacy to her residuary legatee. We conclude, therefore, that, in view of the scope of the doctrine of ademption as we have defined it, the delivery to the testatrix of her distributive shares in the Nice estates, and her acceptance of the same, would not have operated to adeem the specific legacy bequeathed by her will to her two sisters. It, of course, follows that, if the mere acceptance of her distributive shares by the testatrix would not have operated as an ademption of the legacy, neither could the acceptance of those shares by her committee, Mr. Adamson, produce such a result.

Nor do we approve the determination of the prerogative court that the act of Adamson, the committee of the testatrix, in commingling those distributive shares with other moneys belonging to the estate of his ward, operated as an ademption of the legacy. A committee in lunacy is a mere conservator of his ward's estate, and his possession of that estate vests him with no power, either intentionally or unintentionally, to change his ward's duly expressed purposes respecting the disposition of her estate after her death. To hold otherwise would be to say that he may arbitrarily revoke her will, so far as it provides specific legacies, and may transfer the property which is the subject thereof from the persons designated by the testatrix to the residuary legatee, or—if there be none—to the next of kin. We consider that the English decisions, and those of some of our sister states,

cited in the opinion of the learned vice-ordinary, which affirm the existence of such a power in the committee of a lunatic, are unsound in principle and should not be followed.

We conclude, therefore, that the legacy given by the seventh item of the will of the testatrix was not adeemed by either of the acts of her committee which we have discussed.

It is suggested in the opinion delivered in the prerogative court that the language of the specific bequest indicates that it was the intent of the testatrix that the legacy therein given was only to become operative in case her distributive shares in the Nice estates should not become payable until after her death. We cannot concur in this view. It reads into the bequest, by implication, a condition which the testatrix herself did not see fit to insert therein. It imposes a limitation upon the gift which the language of the bequest itself fails to indicate was in the mind of the testatrix at the time of the execution thereof, and imputes to her a purpose which, in view of the fact that these estates were each of them in process of settlement at the time of the making of her will, and that she was then a comparatively young woman, would seem to be highly improbable.

The decree under review will be reversed.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, MINTURN, KALISCH, BLACK, KATZENBACH, HEPPENHEIMER, ACKERSON, VAN BUSKIRK—10.