370 P.2d 512

In the Matter of the ESTATE of William P. KILLGORE, Deceased.

James KILLGORE, Jessie Howerton, Jennie Harris, Josephine Gould and Robert Killgore, Contestants, Plaintiffs-Respondents,

v.

Bertha KILLGORE, Proponent, Defendant-Appellant.

No. 8978.

Supreme Court of Idaho.

April 4, 1962.

William J. Dee, Grangeville, for appellant.

228

Cox, Ware, Stellmon & O'Connell, Lewiston, for respondents.

SMITH, Chief Justice.

This is an appeal from an order of the district court granting a summary judgment of reversal of an Idaho county probate court order admitting to probate the alleged last will of William P. Killgore, who died March 15, 1956.

Appellant, decedent's widow, in her petition for letters of administration filed in the probate court July 31, 1956, alleged "due search and inquiry" had failed to disclose a last will and testament of her deceased husband, and that he had died intestate. After a hearing the probate court entered an order adjudging the fact of decedent's intestacy, and August 11, 1956, issued letters of administration to respondent.

Nearly a year later, July 11, 1957, appellant filed in the probate court her petition for admission to probate an alleged "lost or misplaced will" of decedent, allegedly executed March 15, 1951, as the joint will of appellant and her husband, copy of which instrument accompanied the petition; therein appellant is named as sole beneficiary of

decedent's estate consisting of community and separate properties. Respondents, five of decedent's surviving children, contested such will and its admission to probate.

The probate court, after a hearing, entered an order January 30, 1958, admitting to probate such alleged lost will as and for decedent's last will and testament and authorizing issuance of letters testamentary to appellant, which order was appealed, on both questions of law and fact, to the district court.

The claimed will was allegedly drafted and witnessed March 14, 1951, by one Wilbur L. Campbell, a Grangeville, Idaho, attorney, whose death occurred prior to that of decedent Killgore, and by Maybelle Fremming, who was Mr. Campbell's secretary. Mrs. Fremming by her affidavit identified an instrument as an alleged carbon copy of decedent's will which she stated she typed, and which both Mr. Killgore and appellant jointly executed. The district court's pretrial order recites that appellant claims to have found such carbon copy in a book which belonged to decedent Killgore.

Respondents, basing their motion for summary judgment on the ground of no genuine issue as to any material fact, raised the two issues: (1) whether appellant may testify as a credible witness as to the provisions of decedent's alleged lost will, respondents contending that she cannot be- cause she is the beneficiary under such will; and (2) whether appellant may so testify after having petitioned and secured letters of administration on her allegation that decedent died intestate, respondents contending that she is estopped from testifying as a credible witness in the later proceeding.

The district judge in his opinion recited that the sole question for determination is whether appellant is a credible witness to prove the lost or destroyed will; that it appears one witness is available but, in the event appellant is not available as a witness, the will cannot be established. The court then ruled that appellant cannot qualify as a credible witness to prove the contents of the alleged lost or destroyed will and thereupon granted the motion for summary judgment in favor of respondents, reversing the order of the probate court which admitted to probate the alleged lost will; thereupon this appeal resulted.

█ Appellant assigns error committed by the district court in granting respondents' motion for summary judgment. Such assignment presents the question whether "there is no genuine issue as to any material fact," I.R.C.P. 56(c), for determination *de novo* in the district court.

I.C. § 17–206 relating to appeals from the probate court upon questions of both law and fact, as is the case here, contains the mandatory provision:

"If the appeal be upon questions of both law and fact, the trial in the district court shall be de novo."

I.C. § 15–231, unchanged since the time of its original enactment, Prob.Prac., Laws of 1864, § 38, reads:

"Lost will—Evidence necessary to establish.—No will shall be proved as a lost or destroyed will unless the same is proved to have been in existence at the time of the death of the testator, or is shown to have been fraudulently destroyed in the lifetime of the testator, nor unless its provisions are clearly and distinctly proved by at least two credible witnesses."

Respondents contend that the common law of England, adopted in this state by Idaho Laws of 1864, § 1, now I.C. § 73–116, rendered incompetent a subscribing witness to a will, if he is a beneficiary thereunder; that the English Wills Act of 1837, removed such disqualification by voiding any beneficial interest of a subscribing witness; that such common law in force in 1864 when the present law I.C. § 15–231, was enacted in 1864, became the law of this state; that a witness to the contents of a lost will stands in the same position as a subscribing witness, and thus is rendered incompetent to testify as to the contents of a lost will, if he has a beneficial interest thereunder; that therefore appellant, as a matter of law, cannot qualify as a credible witness for the purpose of proving the provisions of decedent's will. We are unable to agree with this contention.

At the time of the adoption of the English common law in Idaho, January 4, 1864, Idaho Laws of 1864, § 1, now I.C. § 73–116, there was no rule of English common law or enactment of English statute comparable to I.C. § 15–231.

Under the English common law prior to January 4, 1864, proof of a lost will was governed by the general rules relating to admissibility of secondary evidence to prove lost documents. The Court of Queen's Bench, in Brown v. Brown, 8 E. & B. 876, 27 L.J. (Q.B.) 173, 120 Eng.Rep. 327 (1858), held that secondary evidence, (i. e., evidence other than the testimony of an attesting or subscribing witness), was admissible to prove a lost will, Lord Campbell, C. J., stating:

"I feel no doubt that evidence of the contents of the second will was properly received at Nisi prius; for it was the common case of a lost instrument; and parol evidence of the contents of a lost instrument may be received as much when it is a will as if it were any other." (120 Eng.Rep. 331.)

In the case of In re Herbert Colthorpe Gardner, 1 Sw. & Tr. 109, 27 L.J. 55, 164 Eng.Rep. 651 (1858), an English army officer, after having made his will in India, was forced to flee that country leaving all

his possessions, including his will. After his death, his widow, sole devisee, legatee and executrix under the supposed lost will, sought its probate in England, supporting her petition by the joint affidavit of herself and of one alleged attesting witness, as to both execution and contents. Relying on Brown v. Brown, supra, the court held that the probate was properly granted. Neither the Brown case nor the Gardner case considered the Wills Act of 1837 (7 Will 4 & 1 Vict. c. 26, §§ 14–17, 15 Chitty's Eng. Stat., 6 Ed., pp. 715–716), as having changed, with respect to wills, the common law rule as to proof of lost documents. Moreover, interested persons had been rendered competent as witnesses generally by the English Evidence Acts of 1843, 1851 and 1953, infra. Such was the state of the English common law, as to the proof of lost wills, on January 4, 1864.

Two cases subsequent to the date that Idaho adopted the English common law, Wharram v. Wharram, 3 Sw. & Tr. 301, 33 L.J. (P.M.A.) 75, 164 Eng.Rep. 1290, (Mar. 22, 1864), and Moore v. Whitehouse, 3 Sw. & Tr. 567, 34 L.J. (P.M.A.) 31, 11 L.T. 458, 164 Eng.Rep. 1395, (Nov. 4 and 29, 1864), cast doubt upon or limited Brown v. Brown, supra.

In the Wharram case, the court refused probate of an alleged lost will when its probate was sought some seven years after the death of the claimed testator, the peti-

tion being supported by the testimony of one interested witness, along with that of two others with "natural leaning toward the one." There was a total absence of testimony as to the cause of loss of custody of the lost will. The court held that parol evidence, relied on to prove a lost will, must "be of a very cogent character," and should be allowed only in cases fairly free from doubt or suspicion. The Moore case, dealing with proof of the execution of a lost will and not with proof of its contents, held that where one of the witnesses was the fiancee of a legatee, as well as the drawer, custodian and destroyer of the will, execution must be proved beyond a reasonable doubt. Those cases suggest that the court, in the Brown and Gardner cases, did not sufficiently consider the effect of the Wills Act of 1837 upon the common law rule.

However, by virtue of later reaffirmance of Brown v. Brown, supra, by Sugden v. St. Leonards (Lord), 45 L.J.P. 49, 1 P.D. 154, 34 L.T. 372, 24 W.R. 860 C.A., (1876), we may continue to accept the rule of the Brown and Gardner cases as the English common law as respects proof of lost wills. Holding that a lost will could be proved by the testimony of a legatee, in Sugden v. St. Leonards, supra, the Court said:

"Undoubtedly there is great danger in accepting evidence derived from the recollection of any person as to the contents of an instrument of this kind;

that danger is greatly enhanced when such evidence is derived from a person ·deeply interested in establishing the instrument in the form in which that person alleges it existed. But, on the other hand, there would be a very great danger if a Court were to lay down an arbitrary rule that in the event of a document, however important in its character, being missing, whether as the result of fraud or accident, it should be impossible to establish its contents by parol testimony. That might lead to the defeating of justice in many, if not in as many, instances as might arise from the Court acting upon such testimony." (1 P.D. 177).

The term "credible witness" in I.C. § 15-231, when enacted January 4, 1864, did not refer to any English common law rule by which beneficially interested witnesses were incapacitated to testify to the provisions of a lost will, since no such rule existed.

We now turn to the English common rules of evidence as they relate to the subject of credibility of witnesses. Under such rules, as they existed in 1864*, the question of the credibility of witnesses rested with the trier of facts, going to the weight rather than to

the admissibility of the testimony. See generally, 13 Halsbury, Laws of England, p. 569, § 777, and pp. 600–604, §§ 800–818; 22 Eng. & Emp.Digest, pp. 388–92, §§ 3974–4004, and pp. 482–92, §§ 5077–5208. See also, 98 C.J.S. Witnesses §§ 458–460, pp. 320–324, and the discussion in 2 Wigmore on Evidence, 3rd Ed., pp. 674–695, §§ 575–578.

■■ In the absence of any indication in I.C. § 15–231, that the term "credible witnesses" is used in some special sense, it necessarily follows that the application of the common law evidence rules, as to the credibility of witnesses, was intended. Thus, when the provisions of a lost will are to be proved under I.C. § 15–231, the court as the trier of the facts should receive the evidence, weigh it, and determine whether the statutory requirements of I.C. § 15–231 have been met, particularly the requirement that the provisions of the lost will were "clearly and distinctly proved by at least two credible witnesses." In making the determination, the court, as trier of the facts, is in position to evaluate the credibility of the witnesses in the light of all the circumstances, including any beneficial interest under the alleged lost will. The fact

---

* Prior to 1843, persons interested in an action were incompetent as witnesses. Persons interested in the action were made competent witnesses by the Evidence Act of 1843, 6 & 7 Vict. c. 85, § 1, 4 Chitty's Eng.Stat. 6th Ed., p. 531. Parties to an action were made competent as witnesses by the Evidence Act of 1851, 14 & 15 Vict. c. 99, § 2, 4 Chitty's Eng.Stat., 6th Ed., p. 534; and the Evidence Amendment Act, 1853, 16 & 17 Vict. c. 83, § 1, 4 Chitty's Eng.Stat., 6th Ed., p. 539. See also 13 Halsbury, Laws of England, Witnesses, Part V, § 777, p. 569.

that appellant allegedly is a beneficiary does not ipso facto render her incredible as a witness. See also, Middleton v. Middleton, 188 Ark. 1022, 68 S.W.2d 1003; Cox v. Beaufort County Lumber Co., 124 N.C. 78, 32 S.E. 381; Harrell v. Harrell, 284 Mo. 218, 223 S.W. 919; In re Dalbey's Estate, 326 Pa. 285, 192 A. 129; 95 C.J.S. Wills § 338, p. 189; Anno. 41 A.L.R.2d 393, to the effect that a witness is not rendered incompetent to testify concerning the provisions of an alleged lost will on the ground that he may have a beneficial interest.

Respondents' contention, that appellant is estopped from pursuing the testacy proceeding on the ground that she is rendered incompetent as a witness in such proceeding, inasmuch as she originally applied for and obtained letters of administration on the theory that decedent died intestate, is initially answered in the negative by I.C. § 15–363 which reads in part as follows:

"If, after granting letters of administration on the ground of intestacy, a will of the decedent is duly proved and allowed by the court, the letters of administration must be revoked, * *."

Thus, even though letters of administration were granted to appellant on the ground of intestacy, nevertheless the statute affords her the right and opportunity to duly prove a will of decedent, if such there be, I.C. § 15–363, and additionally to duly prove its provisions clearly and distinctly by at least two credible witnesses, I.C. § 15–231.

The right to apply for letters testamentary on the ground of alleged testacy, after letters of administration have issued on the theory of alleged intestacy, was recognized in re Harrington's Estate, 43 Idaho 447, 252 P. 868, and Hull v. Cartin, 61 Idaho 578, 105 P.2d 196; the evidence adduced in those cases however, was held insufficient to prove the provisions of a lost will, i. e., clearly and distinctly by at least two credible witnesses, under the test of I.C. § 15–231. Dowd v. Dowd, 62 Idaho 631, 115 P.2d 409, 135 A.L.R. 1213, cited by respondents, did not involve a lost will, but one which had been in the proponent widow's possession continuously during a period of 20 months after issuance to her of letters of administration, during which time she had litigated the estate before applying for letters testamentary. The court, applying principles of estoppel, held that proponent should not be heard to assert that the decedent left a will after thus withholding it from the court. In effect, the court held that she stood in the position of one who had destroyed the will. Likewise in Gilliam v. Gilliam, 306 Ky. 102, 206 S.W.2d 199; In re Calich's Estate, 214 Minn. 292, 8 N.W.2d 337, Allnutt v. Wood, 176 Ark. 537, 3 S.W.2d 298, and Keery v. Dimon, 91 Hun. 642, 37 N.Y.S. 92, aff'd 153 N.Y. 662, 48 N.E. 1105, cited by respondents, the

evidence was held insufficient to prove a lost will. In all those cases factual situations were developed by adduced evidence, thereby to determine the question of its sufficiency.

The allegations of appellant's petition for letters of administration do not appear to have precluded her as a matter of law from proceeding pursuant to the provisions of the aforesaid sections of the statute. In her petition for letters of administration she stated merely that according to her best knowledge, information and belief decedent died intestate, and the finding of the probate court merely confirmed such statement of appellant.

In her later petition to establish and probate decedent's "lost or misplaced will" she alleges an instrument presented, upon her information and belief, to be a carbon copy of decedent's lost or misplaced will, which copy, according to the district court's pre-trial order, she found in one of decedent's books. The pleadings of respondents, contestants of the alleged will, present the issues, whether decedent left any will duly executed and attested; if so, whether he executed it under undue influence; also, whether he revoked and annulled his will, if any there was, during his lifetime; all of which presents the ultimate issue, whether there existed a will of the decedent at the time his death occurred,—a question of fact to be determined with the burden of

proof resting on appellant under I.C. § 15–231; appellant being required nevertheless, to assume the further burden of proof under such statute, of clearly and distinctly proving the provisions of the alleged will by at least two credible witnesses.

■ Whether a will existed as of the time of the alleged testator's death is a question of fact. In re Colbert's Estate, 31 Mont. 461, 78 P. 971, 80 P. 248; Merrick v. Prescott, 48 N.D. 195, 183 N.W. 1011; In re Moramarco's Estate, 86 Cal.App.2d 326, 194 P.2d 740; In re Reynolds' Estate, 94 Cal.App.2d 851, 211 P.2d 608; In re Sitton's Estate, 149 Cal.App.2d 1, 307 P.2d 654.

■ The burden of proving that a lost will was in existence at the time of the death of the alleged testator is upon the proponent of the will. I.C. § 15–231; In re Flood's Estate, 47 Cal.App.2d 809, 119 P.2d 168; In re Benson's Estate, 62 Cal. App.2d 866, 145 P.2d 688; Martin v. Wagner, 247 Ala. 591, 25 So.2d 409, cert. denied 329 U.S. 740, 67 S.Ct. 77, 91 L.Ed. 639.

■ "The trial court, when confronted by a motion for summary judgment, must determine if there are factual issues which should be resolved by the trier of facts. On such a motion it is not the function of the trial court to weigh the evidence or to determine those issues. Moreover, all doubts must be resolved against the party moving

for a summary judgment. (Citations.)" Merrill v. Duffy Reed Construction Co., 82 Idaho 410, 353 P.2d 657.

Under statutes like or similar to I.C. § 15–231, the function of the trial court is to weigh the testimony and pass upon the credibility of witnesses. Cal.Code, Probate, § 350; West's Ann.Cal.Probate Code, § 350; In re Sitton's Estate, 149 Cal.App. 2d 1, 307 P.2d 654; In re Harrington's Estate, 43 Idaho 447, 252 P. 868.

■ The credibility of witnesses and the weight to be given their testimony is for the trier of the facts. Sartor v. Arkansas Natural Gas Corporation, 321 U.S. 620, 64 S.Ct. 724, 88 L.Ed. 967, wherein the court in setting aside a summary judgment said:

"We think the defendant failed to show that it is entitled to judgment as matter of law. * * * It may well be that the weight of the evidence would be found on a trial to be with defendant. But it [the court] may not withdraw these witnesses from cross-examination, the best method yet devised for testing trustworthiness of testimony. And their credibility and the weight to be given to their opinions is to be determined, after trial, in the regular manner."

In Aetna Life Insurance Co. v. Ward, 140 U.S. 76, 11 S.Ct. 720, 35 L.Ed. 371, the court said:

"The jury were the judges of the credibility of the witnesses * * * and in weighing their testimony had the right to determine how much dependence was to be placed upon it."

In Moore's Federal Practice, 2nd Ed., Vol. 6, Summary Judgment, § 56.15 [4], p. 2139, the rule amply supported by authorities is stated:

"The general and well settled rule is that the court should not resolve a genuine issue of credibility at the hearing on the motion for summary judgment, whether the case be a jury or court case; and if such an issue is present the motion should be denied and the issue resolved at trial by the appropriate trier of the facts, where, to the extent that witnesses are available, he will have the opportunity to observe their demeanor."

See also Merrill v. Duffy Reed Construction Co., 82 Idaho 410, 353 P.2d 657.

■ The order of the district court granting summary judgment of dismissal is reversed and the cause remanded with directions that it be reinstated and that further proceedings be had therein consonant with the views expressed herein. Costs to appellant.

TAYLOR, KNUDSON, McQUADE and McFADDEN, JJ., concur.