Argued February 8, affirmed September 6, 1962

IN THE MATTER OF THE ESTATE OF
DELIA CHOCKTOOT BISS, DECEASED
BISS v. PARRISH ET AL
374 P. 2d 382

*W. R. Bradshaw,* Klamath Falls, argued the cause for appellant. With him on the brief was David R. Vandenberg, Jr., Klamath Falls.

*Robert G. Danielson,* Salem, argued the cause for respondents. With him on the brief was Glenn D. Ramirez, Klamath Falls.

Before McALLISTER, Chief Justice, and WARNER, SLOAN, O'CONNELL and LUSK, Justices.

SLOAN, J.

Petitioner brought this proceeding to obtain a determination that one of the bequests of the will of the decedent, Delia Chocktoot Biss, had been adeemed by reason of the extinction of the subject matter of the bequest. Petitioner is the son of decedent and would take the money given by the will as the residuary legatee if it is held that the bequest fails. The persons named in the bequest were petitioner and grandchildren of decedent. The latter have opposed the petition. The trial court held that the bequest had not been adeemed. The petitioner appeals.

The bequest claimed to have been adeemed was:

"I give, devise and bequeath all money that I may have in my account at the Klamath Agency, in equal shares, to my beloved son, Richard Biss, and my beloved granddaughters, Vernace Chocktoot Crain, age 19 years, Harriett Chocktoot, age 16 years, Geraldine Chocktoot, age 13 years, and Babe Valeta Chocktoot, age 11 years, who are the daughters of my deceased son, Jerry Chocktoot and who are all members of the Klamath Tribe."

The will was executed on November 1, 1948. At that time decedent had an account at the Klamath Agency.

In 1954 by Public Law 587, 68 Stat 718, Congress provided for the termination of federal supervision of the property of the Klamath Tribe of Indians and of the individual members of the tribe. The tribe and the members thereof were then possessed of property of great value. The Act cited made provision to prevent improvident wasting of this property. § 15, at page 722, of the Act provided that:

> "Prior to the transfer of title to, or the removal of restrictions from, property in accordance with the provisions of this Act, the Secretary shall protect the rights of members of the tribe who are minors, non compos mentis, or in the opinion of the Secretary in need of assistance in conducting their affairs by causing the appointment of guardians for such members in courts of competent jurisdiction, or by such other means as he may deem adequate."

By Public Law 85-132, August 14, 1957, 71 Stat 347, 348, 25 USC § 564n, the Act of 1954 was amended. One of the amendments was:

> "Section 15 of the Act is amended by changing the period at the end thereof to a comma and by adding 'without application from the member, including but not limited to the creation of a trust of such member's property with a trustee selected by the Secretary, or the purchase by the Secretary of an annuity for such member: *Provided, however,* That no member shall be declared to be in need of assistance in conducting his affairs unless the Secretary determines that such member does not have sufficient ability, knowledge, experience, and judgment to enable him to manage his business affairs, including the administration, use, investment, and disposition of any property turned over to such

member and the income and proceeds therefrom, with such reasonable degree of prudence and wisdom as will be apt to prevent him from losing such property or the benefits thereof.' "

The Act and the amendment together with the action taken pursuant thereto by the responsible officials in respect to decedent's property are pertinent to decision in this case.

In October 1957, proceedings were initiated to declare decedent in need of assistance in conducting her affairs. It is not clear from the record whether the proceedings were started by a request of decedent or by the officials who were aware of her affairs. The record indicates that the latter was the cause of the proceedings. The record of the findings adopted by the Secretary of Interior in respect to decedent, a part of the evidence in this case, reveals that decedent, Delia Chocktoot Biss was then 76 years of age. That between February 2, 1955, and July 7, 1957, she had spent from her funds in the Klamath Agency account more than $23,000 with "no material benefit to herself resulting from such expenditures." The findings also include a written request of decedent that the "* * * Secretary of Interior establish protection of my property." The findings provide a basis for the determination of the Secretary that decedent was in need of assistance as provided by the Act.

As a result of this determination a trust agreement was entered into between the Secretary, as Trustor, and the First National Bank of Portland, as Trustee, which transferred to the Trustee certain assets described in a schedule attached to the trust agreement which were then being held by Trustor for the benefit of decedent. She was named as the beneficiary of the

trust agreement. The trust agreement provided that it would terminate at the death of the beneficiary and the remaining proceeds be delivered to her personal representative for distribution to those legally entitled thereto according to the laws of Oregon. The schedule of assets delivered to the Trustee included this statement: "This includes approximately $56,000 in funds now held by the Secretary's authorized representative, and such other funds that may come under control of the trustor prior to the removal of restrictions pursuant to Section 8 of the Klamath Termination Act (68 Stat. 718) as amended." The schedule of assets included other real and personal property. We are only interested in the fund that was transferred from the Klamath Agency account. Apparently there was $51,344.19 transferred to the bank as Trustee from this account.

In briefs and argument here as well as in the proceedings before the trial court it was said that "* * * Testatrix terminated her account at the Klamath Agency and deposited the funds withdrawn therefrom under a trust with the First National Bank of Oregon which said trust continued to the date of Decedent's death * * *", and that decedent did not, therefore, leave any funds at the Klamath Agency and the bequest naming those funds must fail.

We have mentioned the Act and amendment thereto and the process by which the funds were transferred at some length. We have done so to show that petitioner has proceeded under a misconception of the correct factual and legal background of this transfer of decedent's funds. The only act of decedent was to request that she be given assistance. Pursuant to the authority granted to him by the Act the Secretary thereafter made every determination as to her need

for assistance and what should be done with the funds following that determination. The Act gave to the Secretary considerable latitude in deciding what means to employ to protect the funds. It was the Secretary's decision to deposit the funds with a corporate trustee. The transfer was made by the Secretary, not decedent. The Secretary had held the funds as a Trustee but apparently without any restrictions as to decedent's right to expend all of them at her pleasure or demand. Because of his determination that decedent needed aid he was, by the Act, empowered to place the funds beyond the immediate use of decedent except for the funds needed for her care and survival. We consider the facts above discussed to be of importance, for the property bequeathed by the questioned paragraph of the will was not by decedent, sold, destroyed, given away, expended or otherwise put beyond the control of decedent to dispose of by will. The transfer of the funds was one of form only.

We have been cited to and have referred to treatises on the history and changing concepts of the law of ademption. We find no reason to repeat what has elsewhere been thoroughly told, analyzed and criticized. The best of these are: Page, Ademption by Extinction: Its Practical Effects, 1943, Wisc L Rev 11; Mechem, Specific Legacies of Unspecific Things, 1938-39, 87 Pa L Rev 546; Ademption and the Testator's Intent, 1960 (note) 74, Part 1, Harv L Rev 741; 4 Page, Wills (3d ed) 1941, Chapter 43, page 354, et seq.; Atkinson, Handbook of the Law of Wills, (2d ed) 1953, page 741, et seq.

The numerous case authority, like the writers just cited, recognize the difficulty the courts have encountered in struggling with the question of ademption. In summation, it can be said that the early English

cases followed Roman law and looked to the intent of the testator at the time he sold or altered the property previously bequeathed. If it appeared that he did not sell or alter the property with an intent to avoid the bequest then the bequest was not adeemed. In the cases of *Asburner v. MacGuire,* 1786, 2 Bro CC 108, 29 Eng Rep 62, and *Stanley v. Potter,* 1789, 2 Cox Eng 180, the intent theory was abruptly terminated. In *Stanley v. Potter,* supra, Lord Thurlow pronounced the much quoted doctrine that:

> "When the cases of Ashburner v. M'Gwire was before me, I took all the pains I could to sift the several cases upon the subject, and I could find no certain rule to be drawn from them, except this, to inquire whether the legacy was a specific legacy (which is generally the difficult question in these cases), and if specific, whether the thing remained at the testator's death; and one must consider it in the same manner as if a testator had given a particular horse to A. B. if that horse died in the testator's lifetime, or was disposed of by him, then there is nothing on which the bequest can operate. And I do not think that the question in these cases turns on the intention of the testator. The idea of proceeding on the *animus adimendi* has introduced a degree of confusion in the cases which is inexplicable, and I can make out no precise rule from them upon that ground. * * * And I believe it will be a safer and clearer way to adhere to the plain rule which I before mentioned, which is to inquire whether the specific thing * * * given remains or not."

"This view has been adopted by the great majority of American courts.* The theory that ademption by extinction depends on the intention of the testator has generally been discarded or forgotten;* and the test of ademption is on whether or not the thing which was

bequeathed is in existence at testator's death and belongs to him at that time." Page, Ademption by Extinction, supra, 1943 Wisc L Rev 19, 20. (Footnotes omitted.)

 Professor Page in the same treatise, and the other writers cited, observe that the courts then devised other means to avoid the harsh result that frequently followed from rigid adherence to the rule.

> "* * * Lord Thurlow's view, as we know, ultimately prevailed, but not without a struggle. In the process, the generality of its application was narrowed and something of the mercifulness of the older doctrines salvaged by the gradual recognition of a fourth type of legacy, half general and half specific, one known before and indeed to some slight extent borrowed from the civil law, and yet one not fully standardized and defined until Lord Thurlow's rule focused attention on it. This was, of course, the demonstrative legacy." Mechem, supra, 87 Pa L Rev 562, 563.

And see the careful study of Warren, History of Ademption, 1939-40, 25 Iowa L Rev 290. It appears that the concept of a demonstrative legacy was invented to escape the necessity of adeeming a legacy. If it is found that the legacy is demonstrative rather than specific, it will not be adeemed. *In re Preston's Estate,* 1937, 157 Or 631, 73 P2d 369. In this case the bequest must be considered a specific one. It does not follow, however, that the bequest must be adeemed.

 Two other exceptions are now followed by most of the courts. One is in the situation where the testator becomes mentally incompetent after the execution of the will and his guardian or conservator sells the property subject to a bequest in the will. The leading case on this exception is *Wilmerton v. Wilmerton,* 7th Cir

1910, 176 F 896, cert den 217 US 606, 30 S Ct 696, 54 L Ed 900. It was held that the disposal of the property by a conservator did not adeem a bequest. The opinion by Spalding, J., in *Walsh v. Gillespie,* 1959, 338 Mass 278, 154 NE2d 906, presents a very able discussion of this question and analyzes the conflicting views of the courts. The decision follows the majority rule and held an ademption did not occur. These, and like cases, carry persuasion in our own case. Although there is no showing here that the decedent Biss was not mentally competent when the funds were transferred, as we have seen the manner and the method of the transfer of the funds were beyond her control. For all intents and purposes it was just as though the funds had been transferred by a guardian.

■ Of greater significance to our case, however, is the exception that change of form only and not of substance does not adeem a bequest. "If property which is specifically devised or bequeathed remains in existence, and belongs to the testator at his death, slight and immaterial changes in its form do not operate as an ademption.*" 4 Page, Wills, supra § 1523, 375. (Footnote omitted.) "Changes of form, if not substantial, do not cause an ademption." Atkinson, Handbook on Wills, supra § 134, 747. The same exception is discussed and many cases cited in the article by Professor Page in the 1943 Wisc L Rev, supra, and by Professor Mechem in the Pa L Rev treatise, supra.

In this case we think that the change in the funds was scarcely even one of a change of form. The fund was placed in different hands and subject to some but not complete restriction. The trust agreement provided means by which decedent could have terminated the trust. Otherwise the fund was identical. True the

fund was invested by the Trustee in its common trust funds but the fund was at all times identifiable and reverted to the administrator with the will annexed immediately upon decedent's death. The fund was substantially the same as that actually mentioned in the bequest at all times and, as stated, was available at death to be subject to the bequest.

The facts of this case are distinctly unique. Similar cases would be rare. We think that the facts do not support petitioner's contention that the bequest was adeemed and the decree is affirmed.