422 P.2d 74

**OUR LADY OF LOURDES, Plaintiff-Appellant,**

**v.**

**Richard VANATOR and Ernest King, Defendants-Respondents.**

**In the Matter of the ESTATE of Flora VANDAL, Deceased.**

**No. 9883.**

Supreme Court of Idaho.
Jan. 6, 1967.

Blake, Givens & Feeney, Lewiston, James H. Hawley, Boise, for appellant.

Ware, Stellmon & O'Connell, Lewiston, for respondents.

SMITH, Justice.

This appeal presents the issue whether a clause of a decedent's will specifically devising real property, was adeemed in favor of the residuary legatees, by a guardians' sale of the property after the testatrix was adjudged incompetent, particularly where, upon death of the incompetent, there remained unexpended proceeds of the sale.

The sixth and seventh clauses of Flora Vandal's will read:

"Sixth: I give, devise and bequeath my real property in Lewiston Orchards, being Lot 3, Block 91 of said Lewiston Orchards, according to the recorded plat thereof, to my friends, Mr. and Mrs. Richard Vanator, and Mr. and Mrs. Ernie King.

"Seventh: In the event there is any money left after the payment of my debts and expenses of administration, said remaining money is to be divided equally between Our Lady of Lourdes Church, Lewiston, Idaho, which church is to receive one-half thereof, and Opal (Mrs. Richard) Vanator and Josie (Mrs. Ernie) King, who are to receive the other half thereof, or one-fourth each."

Some years after making her will Flora Vandal was adjudged incompetent by the Nez Perce County Probate Court. Respondents, upon being appointed guardians of the incompetent and her estate, sold at guardians' sale the ward's real property, described in the sixth clause of the will, for the sum of $8,500. They had expended $2,107.26 thereof in payment of necessary expenses incurred for maintenance and support of the ward when her death occurred, leaving on hand $6,392.74 as the unexpended balance of the proceeds of the sale.

After the estate of Flora Vandal was admitted to probate in the Nez Perce County Probate Court the executor of the estate

petitioned the court for a declaratory judgment construing the will, the parties affected being appellant, named as a residuary legatee in the will, and respondents to whom, and to their wives, the testatrix specifically devised the real property. The question presented was: "Whether the monies [representing the proceeds of the land sale] * * * are distributable to the beneficiaries named in Clause Sixth of said will * * * or whether the same, after the payment of legacies and bequests should be divided in accordance with Clause Seventh of said Will * * *."

The probate court in due course entered an order and judgment decreeing in effect, that the guardians' sale did not adeem the specific devise under clause sixth except insofar as the guardians had expended the proceeds for Flora Vandal's maintenance and support, and that distribution of the remaining proceeds should be made according to that clause. Our Lady of Lourdes Church thereupon appealed from such judgment to the Nez Perce County District Court. The court, after entering findings of fact and conclusions of law, entered judgment which in effect affirmed the order and judgment of the probate court. From that judgment appellant has appealed.

Appellant, by its assignments of error, presents the issue whether the sixth clause of decedent's will was adeemed by the guardians' sale of the real property, appellant asserting that the district court erred in concluding and adjudging that the remaining proceeds of the guardians' sale are subject to distribution according to the sixth clause; that such clause was not adeemed, and in entering judgment accordingly.

(Herein the use of the terms "bequeath," "bequest" and "legacy," is intended to include the terms "devise," "devisee" and "legatee.")

The question presented is one of first impression in this State. Appellate courts in other jurisdictions however, have considered the same issue raised here. The reasoning of those courts we find persuasive in the instant case.

■ Typically, ademption occurs when a testator voluntarily alienates the subject matter of a specific legacy or permits extinction of the property, in a manner from which an intention that the legacy should fail, can be presumed.

"Ademption of a specific legacy is the extinction or withdrawal of a legacy in consequence of some act of the testator equivalent to its revocation, or clearly indicative of an intention to revoke. The ademption is effected by the extinction of the thing or fund bequeathed, or by a disposition of it subsequent to the will, which prevents its passing by the will, from which an intention that the legacy should fail is presumed." Kramer v. Kramer, 201 F. 248, 253 (5th Cir. 1912). See also I.C. § 14–317; Halfmoon v. Moore, 77 Idaho 247, 291 P.2d 846 (1955); Stone v. Fisher, 65 Idaho 52, 139 P.2d 479 (1943); In re Mason's Estate, 62 Cal.2d 213, 42 Cal.Rptr. 13, 397 P.2d 1005 (1965); 4 Page, Wills § 1513 (1941 ed.).

I.C. § 14–317 requires that an instrument, by which the testator alienates a specific bequest, must express the intent that it shall be a revocation or that it contain provisions wholly inconsistent with the terms and nature of the testamentary disposition, in order that it operate as a revocation thereof. See also Stone v. Fisher, supra.

The testatrix having been adjudged incompetent, her guardians, clothed with special limited authority, and as authorized and directed by court order, sold the property affected by the specific devise of clause sixth of the will. Intent of the testatrix to alienate the property is absent. Nor is the "specie," .i. e., the land, affected by the specific bequest, identifiable in the decedent's estate.

■ Appellants contend that the intent of the testator to revoke a specific bequest is immaterial for the purpose of determining whether ademption occurs, citing Halfmoon v. Moore, supra, and Stone v. Fisher, supra. The majority rule in situations where the testator himself voluntarily sells, destroys, or collects the subject matter of a specific bequest is that the gift is

adeemed without regard to whether the testator actually intended to deprive the legatee of the bequest. 4 Page, Wills § 1527, at 382 (1941 ed.); Note, 74 Harv.L. Rev. 741, 742 (1961). Under Idaho law as well, a testator's subsequent written instrument affecting his interest in the devised property will revoke a prior specific devise if the provisions of the instrument are wholly inconsistent with the terms and nature of the testamentary disposition, even though the testator's express intent to adeem does not appear on the face of the instrument. I.C. § 14–317; Halfmoon v. Moore, supra; Stone v. Fisher, supra.

■ However, where the testator becomes incompetent, and thereafter his guardian alienates the subject matter of the specific bequest, the testator has no legal capacity to restore or revise his testamentary scheme. The guardian is clothed with limited powers only, and charged with the care of the incompetent, I.C. Tit. 15, Ch. 18, Guardian and Ward. The courts recognize, as a further reason for holding that no ademption occurs where a guardian deals with an incompetent testator's property, that if the guardian alienates the subject matter of a specific bequest, he thereby disrupts his ward's testamentary plan, even though the guardian intends to protect the ward's economic interests.

"The conservation of an estate under the lunacy laws, both here and in England, is purely an administrative function. Is it contemplated that an administrator may, at his will, change the testator's will? The testator, lunacy coming on, is so far at least as a disposing mind is concerned, civilly dead. Does the disposing mind, along with the ward's effects, go over to the conservator? Is the conservator anything more than a mere custodian and administrator of the ward's estate, with no power, either directly or by indirection, to change the ward's duly expressed purposes respecting the disposition of that estate until the ward recovers his reason, or the administration after death begins? * * * We think that the rule that legacies are adeemed only where such an intention appears on the part of the testator himself ought to be followed * * * In that way, and in that way only, we think, can the right of the man to dispose of his property according to his own wishes, exempt from the interference, caprice, or interest of others be fully carried out." Wilmerton v. Wilmerton, 176 F. 896, 899–900, 28 L.R.A.,N.S., 401 (7th Cir. 1910), cert. den. 217 U.S. 606, 30 S.Ct. 696, 54 L.Ed. 900.

The same argument is recognized and given substantial emphasis in the following cases: Re Packham's Estate, 232 Cal.App.2d 847, 43 Cal.Rptr. 318 (1965); In re Mason's Estate, supra; Buder v. Stocke, 343 Mo. 506, 121 S.W.2d 852 (1938); Estate of Cooper, 95 N.J.Eq. 210, 123 A. 45, 30 A.L.R. 673 (1923).

■ The large majority of cases holds that no ademption occurs by virtue of the guardian's transfer, receipt, or destruction of the subject matter of a specific devise or bequest, after the testator has become legally incompetent. See, e. g., Re Packham's Estate, supra; In re Mason's Estate, supra; Stake v. Cole, Iowa, 133 N.W.2d 714 (1965); Bishop v. Fullmer, 112 Ohio App. 140, 175 N.E.2d 209 (1960); In re Bierstedt's Estate, 254 Iowa 772, 119 N.W.2d 234 (1963); Walsh v. Gillespie, 338 Mass. 278, 154 N.E.2d 906 (1959); Irwin Estate, 23 Pa.Dist. & Co.R.2d 33 (1960); In re Biss's Estate, 232 Or. 26, 374 P.2d 382 (1962). Contra, Re Ireland's Estate, 257 N.Y. 155, 177 N.E. 405 (1931); Hoke v. Herman, 21 Pa. 301 (1853); Re Barrows' Estate, 103 Vt. 501, 156 A. 408 (1931).

The minority position represented by the cases of Re Ireland's Estate; Hoke v. Herman and Re Barrows' Estate, supra, has the advantage of consistency with the majority "identity" test prevailing where the testator remains sui juris after revocation. However, the minority view can be criticized insofar as its application frequently results in

harsh and inequitable rulings. The trend of authorities appears to continue in favor of the majority rule. New York, for example, has modified by statute the rule of the Ireland case as it applies to real property. Irwin Estate, supra, Pennsylvania, which adopted the majority viewpoint, casts doubt upon Hoke v. Herman, supra, which expressed the minority rule. Finally, the Vermont court in Re Barrows' Estate, supra, merely held that there was an ademption of the portion of the specific legacy expended for the ward's support, a result not inconsistent with the majority rule.

■ On the basis of the reasoning aforesaid, we are constrained to hold consistently with the majority rule in American jurisdictions, that no ademption occurs after a testator's incompetency when the guardian sells the subject matter of testator's specific bequest and retains all or part of the proceeds of the sale at the time of the testator's death.

The judgment is affirmed. Costs to respondents.

McFADDEN, C. J., and TAYLOR and SPEAR, JJ., concur.

McQUADE, Justice.

I concur in the result.

The conduct of this court's resolution of the ademption issue here presented is controlled by I.C. § 73–116, which provides:

"*Common law in force.*—The common law of England, so far as it is not repugnant to, or inconsistent with, the constitution or laws of the United States, in all cases not provided for in these compiled laws, is the rule of decision in all courts of this state." (First enacted in Terr. Laws 1863–1864, p. 527, § 1; became law on January 4, 1864.)

See Idaho Const. art. II § 1; cf., Moon v. Bullock, 65 Idaho 594, 603, 151 P.2d 765 (1944).

Although the Idaho legislature has not specifically directed the manner of distribution of the proceeds in question, and in this regard the case may be "of first impression", nevertheless I.C. § 73–116 points to the body of law which determines the issue.

The English common law rule in effect on January 4, 1864, when the provision contained in I.C. § 73–116 was first enacted, is the governing law. See In Re Kilgore's Estate, 84 Idaho 226, 370 P.2d 512 (1962); cf. State ex rel. Rich v. Idaho Power Company, 81 Idaho 487, 501, 346 P.2d 596 (1959). English statutes then in force are included in the received "common law". See In Re Killgore's Estate, supra; Sutherland, Statutory Construction § 2504 (3d ed. Horack 1943).

The early English rule held that when devised real property was sold under authorization of the court in lunacy, converting the nature of testator's interest from realty to personalty and so divesting his interest in the devised realty, the sale worked a complete ademption. Oxenden v. Lord Compton, 2 Ves. Jun. 69, 30 Eng. Rep. 527 (Ch.1793). However, Parliament modified this rule in the Lunacy Regulation Act of 1853, § 119,[1] which provides that sur-

1. Lunacy Regulation Act, 1853, 16 & 17 Vict., c. 70, § 119. "On any Monies being raised by Sale, Mortgage, Charge, or other Disposition of Land made in pursuance of any of the foregoing Provisions [court approved transactions to obtain funds for the support of a lunatic] the Person whose Estate is sold, mortgaged, charged, or otherwise disposed of, and his Heirs, next of Kin, Devisees, Legatees, Executors, Administrators, and Assigns, shall have such and the like Interest in the surplus Monies remaining after the Purposes for which the Monies have been raised shall have been answered as he or they would have had in the Estate if no Sale, Mortgage, Charge, or other Disposition thereof had been made,

plus proceeds from the court authorized sale of a "lunatic's" land shall pass under his will just as the land would have passed had it not been sold. See Re Freer, 22 Ch.D. 622 (1882); Jarman, Wills pp. 163– 164 (6 ed. Sweet 1910). This statute, the English rule on January 4, 1864, when Idaho adopted its reception statute, now I.C. § 73–116, determines the manner of distribution of the proceeds in issue.

and the surplus Monies shall be of the same Nature and Character as the Estate sold, mortgaged, charged, or otherwise disposed of; * * * "

Re-enacted in substantially the same words in the Lunacy Act, 1890, 53 & 54 Vict., c. 5, § 123(1). See 8 Chitty, English Statutes 479 (6th ed. Aggs 1912).