Argued and submitted April 14, 1986, affirmed August 6, 1986

In the Matter of the Estate of
John W. Stenkamp, Deceased.

# STENKAMP,
*Appellant,*

*v.*

# STENKAMP et al,
*Respondents.*

## (D-5125; CA A36805)

723 P2d 336

Milo Pope, Mt. Vernon, argued the cause for appellant. With him on the briefs were Kilpatricks & Pope, Mt. Vernon.

Maxwell Merrill, Bend, argued the cause for respondents. With him on the brief was Merrill & O'Sullivan, P.C., Bend.

Before Warden, Presiding Judge, and Van Hoomissen and Young, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

■    Decedent's wife, who is also his personal representative, appeals the probate court's distribution of a specific devise to decedent's children. She contends that the trial court erred in concluding that the gift had not been adeemed. On *de novo* review, ORS 19.125(3), we affirm.[1]

Decedent's will gave his three children "[m]y interest in the investment plan with United States National Bank of Oregon" (USNB). After providing for other distributions, the will gave his wife the residue of his estate. The plan referred to in the will was a retirement investment plan provided by decedent's employer, USNB. It was funded by employe contributions made through payroll deductions, which would be distributed in cash on retirement, and by employer contributions used by the plan trustee to purchase bank stock. Decedent was entitled to vote the shares purchased by the trustee on his behalf. Both the cash and the stock were held in a trust administered by USNB's trust department.

When decedent retired in February, 1977, his interest in the plan, both the cash and the stock, was automatically distributed to him. He made no change in the stock. When he died in April, 1984, his estate included 1,656 shares of USNB stock: the 831 shares distributed to him on his retirement, plus additional shares received as stock dividends.[2] The trial court concluded that, because the stock was still in existence at the time of his death, and because there was no evidence that decedent intended to change the disposition of the property involved in the investment plan, the specific devise had not adeemed. Accordingly, the court ordered that the stock be distributed to the children.

---

[1] The children contend that, because the decedent's wife failed to designate the transcript of the proceeding below, our review is limited to the sufficiency of the pleadings. We disagree. It is an appellant's responsibility to provide us with a record sufficient to enable us to review the trial court's rulings. *Reeves v. National Hydraulics Co.,* 53 Or App 639, 642, 632 P2d 1306 (1981). The wife designated the trial court file and the exhibits from the proceedings below. Because we review *de novo,* and because the parties do not rely on any evidence in the transcript, we have an adequate record for review.

[2] Initially, the children included a claim for a certificate of deposit alleged to have been purchased with the cash portion of the plan after it was distributed to decedent. That portion of the claim was abandoned, because the funds could not be traced to the certificate of deposit.

Decedent's wife contends that the specific devise had adeemed. She argues that the gift of an interest in the investment plan was a specific devise and that, because the subject of the interest no longer existed at the time of decedent's death, as he no longer held an interest in the investment plan, the gift had been adeemed. The children argue that decedent made no voluntary change in the investment plan, that the only change made was that the funds were automatically transferred to him at the time of his retirement, that that change was one of form, not of substance and that, under the rule established in *Biss v. Parrish, et al,* 232 Or 26, 374 P2d 382 (1962), the devise has not been adeemed.

▆ A specific devise is a gift of the thing itself, in whole or in part, so that only that thing may be burdened. *Skousen, Adm. v. Roelfs,* 209 Or 521, 525, 307 P2d 324 (1957). A specific devise is subject to ademption by alienation or destruction of the fund from which it is to be paid. 209 Or at 525. We agree that the gift of decedent's interest in the retirement fund was a specific devise. However, we do not agree that the gift has been adeemed.[3]

▆▆ Two exceptions to the rule of ademption have developed to avoid harsh results. One arises when the testator is incompetent and the change in the fund was made by a guardian. The second arises when the change in the fund is one of form and not of substance. Both exceptions are recognized in Oregon. *See Biss v. Parrish, et al, supra,* 232 Or at 33-34, where the court applied the change by a guardian exception to a devise which had been affected by a fund transfer made by the Secretary of the Interior under a statute enacted to protect the assets of native Americans. The court held that, although there was no showing that Biss was incompetent at the time the funds were transferred, "the manner and method of the transfer of the funds were beyond her control. For all intents and purposes it was just as though the funds had been transferred by a guardian." In this case, as in *Biss,* decedent's competence was not an issue. However, the distribution of his interest in the plan was automatic and was an event over which he had no control. Thus, as in *Biss,* it

---

[3] The anti-ademption statute does not apply. The devise in question was a gift of an interest in an investment account which happened to include securities, not a specific devise of the securities themselves. ORS 112.385(7).

should not result in ademption.

■ *Biss* also dealt with the second exception, a change in form but not in substance. The devise in that case involved money in a bank account. Under his statutory authority, the Secretary of the Interior transferred the money to a trust for the benefit of Biss. The court held that the change in the fund was not even a change in form; it was merely placed in different hands. In the present case, the stock that had been held by USNB in decedent's name was transferred to him.[4] That change, like the change in *Biss,* did not amount to an ademption.

Affirmed.

---

[4] Appellant argues that, because the bank officer's letter stated that "the original certificate for 831 shares resulted from the distribution of the Employees' Savings Plan," the distribution was not merely a transfer of the stock, but the creation of a different fund. We disagree. Another letter stated, in relevant part:

"3. The Employee Investment Plan is comprised of two accounts, the Employee Contribution Account and the Bancorp Contribution Account. The Bancorp Contribution Account is made up of shares of U.S. Bancorp Stock *which are allocated to the participant at the end of each year* based on Bancorp's net profit and the participant's net contribution for the year. In other words, [decedent's] shares of Bancorp Stock were accumulated over a period of years. The shares were distributed at the end of the year in which he retired which is the normal form of payment for employees who retire." (Emphasis supplied.)

Further, as noted above, decedent had the right to vote the shares held in trust for him. Thus, although the actual certificate may have been created at the time of decedent's retirement, the shares had been distributed to him on the books of the trust at the end of each year of employment. The transfer simply entered his name as the owner of record and transferred the funds from the trust to decedent.