BANK OF DELAWARE, a Delaware Corporation, Executor of the Estate of Mary T. Bringhurst, Plaintiff,

v.

Nancy Sellers HARGRAVES and Edith Claypool Sellers Farnum, Defendants.

Court of Chancery of Delaware.

New Castle.

May 3, 1968.

Potter, Anderson & Corroon, Wilmington, for plaintiff.

Alexander L. Nichols, Johannes R. Krahmer, and Adrienne Arsht of Morris, Nich-

ols, Arsht & Tunnell, Wilmington, and Francis H. Scheetz, and Francis M. Richards, Jr. of Pepper, Hamilton & Scheetz, Philadelphia, Pa., for defendant Nancy Sellers Hargraves.

Robert H. Richards, Jr., of Richards, Layton & Finger, Wilmington, and H. Ober Hess and Benjamin R. Nielson of Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., for defendant Edith Claypool Sellers Farnum.

MARVEL, Vice Chancellor:

Mary T. Bringhurst, owner of Rockwood Manor, an ancestral estate of more than one hundred and fifty acres situate in Brandywine Hundred, died on August 31, 1965, at the age of over one hundred years. She died testate, bequeathing and devising her entire estate to members of her family, including real estate appraised for estate tax purposes at $647,000. By the use of residuary clauses for both her real estate and personalty, she sought to make certain that she would not die intestate as to any of her estate.

Miss Bringhurst's will, which was dated April 21, 1954, after disposing of a number of family heirlooms and household goods and effects, bequeathed the rest of the testatrix's personal property, other than securities, cash, choses in action, and other intangible personal property, to her niece, the defendant Nancy Sellers Hargraves. Next, after making several monetary bequests, the testatrix devised to Mrs. Hargraves designated portions of "* * * the lands now belonging to me * * *" known as Rockwood, her will setting forth the boundaries of the lands so devised. Items Sixth and Seventh of the will read in part as follows:

"Sixth: All the rest, residue and remainder of my real estate, including any real estate over which I shall have any power of appointment by will, I give and devise absolutely in equal shares as tenants in common unto my nieces: NAN-CY SELLERS HARGRAVES and EDITH CLAYPOOL SELLERS FARNUM. * * *.

"Seventh: All the rest, residue and remainder of my personal estate, of whatsoever nature and wheresoever situate, of which I shall be possessed, or to which I shall be in any manner entitled at the time of my death, or over which I shall have any power of appointment by will, or any lapsed legacies, hereinafter together referred to as my residuary personal estate, I give and bequeath unto my niece, NANCY SELLERS HARGRAVES. * * *."

Miss Bringhurst, having thereafter become unable properly to manage and care for her property by reason of her advanced age, mental infirmity, and physical incapacity, a petition was filed in this Court for the appointment of guardians of her estate. After a hearing held on October 22, 1962, William Sellers, a nephew, and Bank of Delaware were appointed co-guardians. Such order remained in force and effect up to the time of Miss Bringhurst's death.

On March 29, 1965, the State of Delaware instituted condemnation proceedings in the Superior Court of this County designed to acquire some 38 acres of Miss Bringhurst's lands for highway construction purposes. On the April 9th following, the sum of $274,000, which had been deposited in Superior Court by the State as its estimate of condemnation moneys due Miss Bringhurst, was ordered paid to her guardians, and an order was entered granting the State possession of the lands sought to be condemned.

On August 31, 1965, Miss Bringhurst died, and the condemnation moneys in the hands of her guardians were paid over to her executor, which moneys were later augmented by the additional sum of $27,800 which had been ordered to be paid as a result of an overall condemnation award of $301,800 made in the Superior Court on January 6, 1966.

The defendants are in agreement concerning the devolution of title to the major portion of Rockwood which passed to Mrs. Hargraves under Item Fifth of the testatrix's will, nor does Mrs. Farnum question Mrs. Hargraves' right to the condemnation moneys allocable to the condemned portion of Rockwood devised to the latter. The defendants disagree, however, on how the proceeds of funds arising out of the condemnation of some 19.27 acres of Bringhurst lands (dealt with in Item Sixth of the will and lying east of Shipley Road and north of Carr Road) should be treated by the executor. Mrs. Farnum contends that the proceeds of the condemnation of such lands, being the equivalent of the land itself, should pass under Item Sixth of the will, while Mrs. Hargraves insists that such proceeds, being clearly personalty, should pass to her under Item Seventh of the will.

The Bank of Delaware, executor of the Bringhurst estate, being unable to determine how such moneys should be distributed thereupon filed its complaint in this Court asking it to "* * * consider the provisions set forth in the Will of Mary T. Bringhurst and instruct the plaintiff as to whether part of the funds held by plaintiffs should be distributed to the defendant Mrs. Hargraves and Mrs. Farnum under ITEM SIXTH of said Will or to Mrs. Hargraves alone under ITEM SEVENTH of said Will * * *."

The answer of Mrs. Farnum seeks an order directing that the condemnation proceeds be considered tantamount to land which has passed in equal shares to defendants under Item Sixth of this will, while Mrs. Hargraves' answer takes the position that there is no need for her to rely on the doctrine of equitable conversion because the proceeds of the condemned lands in question clearly constitute part of the testatrix's personal residuary estate. The condemnation moneys allocable to the condemned 19.-27 acres here involved total $152,700, of which Mrs. Farnum claims a half.

The defendant Hargraves contends that because Item Sixth of the will is what has been termed a particular residuary clause rather than a specific devise, Equitable Trust Company v. Delaware Trust Company, 30 Del.Ch. 348, 61 A.2d 529, the intention therein expressed was to devise all lands in which the testatrix had an interest as of the date of her death, 12 Del.C. § 107, a purpose she pointed up by providing for substitution of beneficiaries, a provision which must necessarily speak as of the time of a testator's death. Therefor, according to counsel for Mrs. Hargraves, inasmuch as the State had entered upon the lands in question for survey purposes on April 5, 1965, and, after obtaining an order of possession on April 9, 1965, had begun continuous construction on the site on July 19 following, all of the steps required to vest title to the condemned premises irrevocably in the State of Delaware had therefor taken place prior to Miss Bringhurst's death. Accordingly, at the time of her death, there was left in her estate, insofar as Item Sixth of the will is concerned, merely cash and a claim for a balance due her executor. In other words, it is contended that the nature of the title to the condemned lands described in Item Sixth of Miss Bringhurst's will held by her at the moment of her death was nothing more than formal legal title held solely as security for the payment of fair compensation for the taking of such lands by the State.

In reply, the defendant Farnum takes the position that, first of all, the record is clear that Miss Bringhurst held title to the lands in question at the time of her death, and secondly, if, because of the pending condemnation proceedings such lands are to be deemed to have been equitably converted to cash at the time of Miss Bringhurst's death, nonetheless, because of her incompetency, the proceeds of such lands must be deemed to have retained the character of real estate. Next, it is contended by such defendant that Item Sixth is in effect a specific devise, which, because of Miss Bringhurst's incompetency, was not adeemed by con-

demnation. Finally, it is pointed out that were Mrs. Farnum not to receive her designated interest in the lands in question in the form of cash, the meticulous division of property directed in Miss Bringhurst's will would be thrown out of balance in a manner which flies in the face of her clearly expressed intent, Bryson v. Turnbull, 194 Va. 528, 74 S.E.2d 180, and compare In re duPont, 41 Del.Ch. 300, 301, 194 A.2d 309.

10 Del.C. § 6110 outlines the procedure to be followed by the condemning authority in order to gain entry into possession of lands following the filing of any condemnation proceeding. Subsection (c) thereof provides:

"In any case where possession has been so taken the obligation of the plaintiff to pay the amount ultimately determined as just compensation in the cause shall be absolute. Title shall vest in plaintiff on the date of payment of the final award."

However, 10 Del.C. § 6109(c) provides:

"At any time before compensation for a piece of property has been determined and paid and, after motion and hearing, the Court may dismiss, the action as to that party, except that it shall not dismiss the action as to any part of the property of which the plaintiff has taken possession, or in which plaintiff has taken title or a lesser interest, but shall award just compensation for the possession, title or lesser interest so taken. The Court at any time may drop a defendant unnecessarily or improperly joined."

In State ex rel. Sharp v. 0.62033 Acres, 10 Terry 90, 110 A.2d 1, the Superior Court,

in discussing such statutes, noted provisions to the effect that title to condemned land does not pass until a final award is fully paid but that whenever possession has been taken (as here), the obligation of the plaintiff to pay the amount ultimately determined as just compensation in the cause shall be absolute. However, the Court did not consider the question as to whether the State may decide not to proceed with an initiated condemnation, and, in effect restore the status quo by returning possession of lands to the condemnee, paying damages, if any, caused by the proceeding to date. In other words, the precise moment when an irrevocable "taking" in a condemnation proceeding actually occurs, if ever, has not been directly decided [1] in Delaware. Compare LaFontaine's Heirs, etc. v. LaFontaine's Heirs, 205 Md. 311, 107 A.2d 653, and United States v. 6,667 Acres of Land (D.C.S.C.) 142 F.Supp. 198.

▋ In my opinion, however, it will not be necessary to decide this controversial point because I am satisfied that at all times here relevant Miss Bringhurst was incompetent[2]. On October 22, 1962, an order was entered by this Court appointing guardians for Miss Bringhurst's estate under the provisions of Title 12, Del.C. § 3914, and Rules 175, 176, and 178 of this Court. Such order remained in full force and effect until her death. Because of such incompetency I am of the opinion, for the reasons hereinafter stated, that the interest of the defendant Mrs. Farnum in the lands here in controversy was not destroyed by reason of the condemnation proceedings here involved.

As stated in Pomeroy's Equity Jurisprudence (Fifth Edition), Vol. 4, § 1167 in ref-

---

1. In the cited case, however, the Court stated that because title does not pass until the final award is fully paid: "Accordingly, the owner does not actually lose his property until he has received his just compensation."

2. The fact that Miss Bringhurst's former attorney wrote to the Highway Depart-

ment on July 3, 1957, almost eight years before an order of possession was entered, protesting about the proposed location of the highway here involved, has not been shown to be relevant or material to the determination of the issue here presented. This was conceded by counsel for Mrs. Hargraves at trial.

erence to what he terms conversion of real property by paramount authority:

"The question now presents itself, Is the property although *de facto* converted, to be treated to any extent as *not* converted? * * *. Where land is purchased or taken under compulsory powers conferred by statute, and the owner is 'sui juris', a conversion is effected; the purchase money, although not yet actually paid, becomes to all intents personal property; but if the owner is an infant or a lunatic, or the land is in settlement, the purchase money remains land, there is no conversion.

"Where land is sold by order of the court for any purpose, it is a fixed principle upon which the court always proceeds, that the character of the property should be changed only so far as may be necessary to accomplish the particular purpose."

While this summary of the law of compulsory taking by the sovereign or other power endowed with the power to take lands of persons not *sui juris* appears to be dispositive of the question here presented, there is, in my opinion, a significant distinction between a guardian's sale of an infant's land and the condemnation of lands of an incompetent. When the land of an infant is sold, the proceeds vest in the minor, which, if retained, pass as personalty on the minor's death. While in the case of the taking of lands of an incompetent, even where a guardian accedes to the proceeding, the funds derived therefrom and paid over to the guardian are deemed in custodia legis and preserved and treated as realty, In re Buck's Estate, 256 Pa. 359, 100 A. 866. And while the English Court of Chancery has historically demonstrated a special interest in the affairs of incompetents, Oxenden v. Lord Compton, 2 Ves. 69 (Eng.) the concept of ademption as applied to persons *sui juris* has tended to

create some confusion in situations such as the one here presented. Thus, when real property of an incompetent is sold in order to provide maintenance for such incompetent, an ademption pro tanto, of course, occurs. However, when lands of an incompetent are taken by paramount authority, a court should, to the fullest extent possible, seek to preserve the proceeds of such taking and treat them as if they were realty [3], Midland Counties R. R. Co. v. Oswin, 1 Colly Chancery Cases 74. Significantly, none of the moneys here involved was required for Miss Bringhurst's maintenance.

Counsel for Mrs. Hargraves, as I see it, concedes that such principle would apply here were the lands involved the subject matter of a specific devise and were there an appropriate statute, but argues that because Item Sixth of the will is a particular residuary clause and no statute exists, there is no basis on which this Court may invoke its equitable powers to preserve the proceeds of Miss Bringhurst's condemned land as realty. The point is, however, that the lands referred to in Item Sixth are readily identifiable and while such item is a particular residuary clause, the true residuary clause of Miss Bringhurst's will is Item Ninth. This is the clause of the will which directs payment of succession or death taxes " * * * out of the portion of my property which would otherwise become part of my residuary personal estate.", 4 Page on Wills (Bowe-Parker Revision), § 33.61. The exhibits of record disclose that ample personalty was available for the payment of debts and taxes of the Bringhurst estate.

The primary duty of a Court in a will construction case is to see to it that, to the extent possible, the intention of the testator is carried out. Accordingly, I decline to adopt a rigid construction of the word "residuary". See 4 Page on Wills (Bowe-Parker Revision), §§ 33.46, 33.51,

---

**3.** Treatment as realty of the surplus proceeds of the sale of lands of an incompetent sold to provide maintenance was made mandatory in England by the Lunacy Regulation Act of 1853 (16 & 17 Vict., Chapter 70, § 119).

33.61, supra, and 33.62. Compare Weed v. Hoge, 85 Conn. 490, 83 A. 636. And while statutes in several jurisdictions specifically provide for preserving the proceeds resulting from the disposal of lands of an incompetent during his or her lifetime as realty, as I see it, a statute is not a *sine qua non* to the invoking of equity's power to carry out a testator's intent concerning the devolution of the proceeds of clearly identifiable lands, particularly where an involuntary conversion of such lands to personalty has been brought about through the action of paramount authority. See majority opinion in our Lady of Lourdes v. Vanator, 91 Idaho 407, 422 P.2d 74, and see Brown v. Cowper, 247 N.C. 1, 100 S.E.2d 305, In re Wharton, 5 De.G., M. & G. (Eng.) 33, In re Barker, L.R., 17 Ch.Div. 241, Annotation 90 A.L.R. at 909 et seq., and Tiffany on Real Property (3rd Ed.) § 306. Compare Smith v. Bayright, 34 N.J. Eq. 424, and Bryson v. Turnbull, 194 Va. 528, 74 S.E.2d 180.

■ Were there any serious doubt about the Court's power to do equity in the present situation, I am satisfied that Rule 178[4] of this Court, when read in conjunction with 12 Del.C. § 3707, provides a procedural basis for the action here taken. Such rule is designed to guide the Court in preserving to the fullest extent possible the pattern of the will of an incompetent by avoiding the sale of property intended for specified beneficiaries.

Finally, while there is no doubt but that Item Sixth of Miss Bringhurst's will speaks as of the time of her death and that if any lands had been acquired by her between the date of her will and her demise, such lands would have passed under such Item (whatever may have been the precise date of the "taking" of the property here in issue), the

4. Such rule provides that when a guardian desires to expend principal of an incompetent ward's estate, his petition shall set forth inter alia:
    "(4) Whether the ward has a will, and if so, the name of its custodian, and whether the granting of such au-

critical point is that the State's act of taking occurred after Miss Bringhurst had been found to be incompetent. Accordingly, the principles which would have applied had Miss Bringhurst been competent at the precise moment of taking of the lands devised in Item Sixth of her will are not relevant to the problem before me.

On notice, an order may be presented directing the plaintiff executor to pay over the net proceeds of condemnation moneys held by it as a result of the State's taking of Miss Bringhurst's lands to the defendants in equal shares.

thority will, to petitioner's knowledge, result in the sale or pledge of property which is the subject of a specific devise or bequest in the infirm person's will. (The prospective devisees or legatees shall not be identified in the petition);"