Argued January 24, affirmed March 23, petition for rehearing
denied April 18, petition for review
allowed June 13, 1972

IN THE MATTER OF THE ESTATE OF LEO D. LARSELL,
DECEASED.

LARSELL, *Respondent, v.* CLARKE ET AL,
*Appellants.*

495 P2d 57

*Bartlett F. Cole,* Portland, argued the cause for appellants. With him on the briefs was Paul Gerhardt, Portland.

*Douglas H. Stearns,* Portland, argued the cause and filed the brief for respondent.

Before SCHWAB, Chief Judge, and FOLEY and THORNTON, Judges.

SCHWAB, C. J.

This will contest concerns the distribution of the assets in the estate of Mrs. Leo Larsell. On October

4, 1963, Mrs. Larsell executed her last will which provides in part:

"FIFTH: I give, devise and bequeath unto my son, Robert Larsell, all of my real property and/or interest in real property that I own situated in Wasco County, Oregon, and all of my interest, being all of the vendor's interest, in a contract of purchase and sale between myself and husband as Sellers and my son, Robert Larsell, and his wife as Buyers, including all payments due thereunder, which contract is dated the 15th day of July, 1963."

The question presented is whether the gift described in the fifth paragraph of Mrs. Larsell's will was adeemed by extinction.

The 1963 land sale contract referred to in Mrs. Larsell's will provided Robert Larsell was to pay the purchase price of $65,000 as follows: $6,500 at the time of the execution of the contract and the balance of $58,500 in non-interest bearing annual installments of $6,500. Robert Larsell made the required annual payments each year between 1964 and 1967, inclusive.

In early 1967, Mrs. Larsell's health and mental facilities began to deteriorate, and Robert Larsell was appointed conservator of her estate on February 20, 1967, by the Multnomah County circuit court.

Later that same year, because of financial difficulties, Robert Larsell found it necessary to borrow against his equity in the Wasco County property. To do this it was necessary for him to obtain clear legal title. Therefore, on December 15, 1967, Robert Larsell individually paid to Robert Larsell as conservator of his mother's estate the full balance then due under the land sale contract, i.e., about $32,500.

Robert Larsell as conservator then deposited

this money in a savings account for his mother. None of this money was ever expended for Mrs. Larsell's care; all of it is directly traceable from the property transaction to the savings account.

All parties agree that in December 1967, Mrs. Larsell lacked testamentary capacity, and that she never regained such capacity before her death on March 24, 1969.

Subsequently, Robert Larsell, as executor of his mother's estate, filed a petition for an order of distribution in which he sought to distribute to himself about $32,500 in satisfaction of the devise provided in the fifth paragraph of the will, on the theory that this gift had not been adeemed under these circumstances. Objectors, who include the residual legatees whose shares of the estate would thereby be reduced, opposed such a distribution. The trial court ruled in favor of the executor, concluding the gift to Robert Larsell was not adeemed, and allowed him $26,000 in satisfaction of it, which is the amount he would have owed under the land sale contract at the time of his mother's death had he continued to make annual payments until that time. Objectors appeal from that decision.

As a threshold problem, the parties are in disagreement about what law governs the question of ademption in this case. Objectors insist ORS 126.495 is controlling. It provided:[1]

"In case of the sale or other transfer by a guardian of the estate of any real or personal

[1] The new probate code amended ORS 126.495 so that it no longer reads as set out above. Oregon Laws 1969, ch 591, section 252, p 1200. Those amendments are not relevant to the question here presented. Also, the new probate code includes a new section on the subject of ademption. See, ORS 112.385.

property specifically devised or bequeathed by the ward, who was competent to make a will at the time he executed the will but was not competent to make a will at the time of the sale or transfer and never regained such competency, so that the devised or bequeathed property is not contained in the estate of the ward at the time of his death, the devisee or legatee may at his option take the value of the property at the time of the death of the ward with the incidents of a general devise or bequest, or the proceeds of such sale or other transfer with the incidents of a specific devise or bequest."

The executor argues there is a body of common law which together with ORS 126.495 or separate from that statute governs this issue.

We read *Biss v. Parrish et al*, 232 Or 26, 374 P2d 382 (1962), as indicating ORS 126.495 is a codification of the common law on this issue. Although that opinion does not specifically mention ORS 126.495, its reference to two of the leading common law cases on ademption[2] as persuasive seems to indicate the Supreme Court felt our statute and the common law were the same. In any event, we believe ORS 126.495 and the common law produce the same result when applied to the facts of this case.

■ We interpret the fifth paragraph of Mrs. Larsell's will as being a gift of an interest in real property.[3] A vendor's interest in a contract of sale is

---

[2] Wilmerton v. Wilmerton, 176 F 896 (7th Cir), *cert denied,* 217 US 606 (1910); Walsh v. Gillespie, 338 Mass 278, 154 NE2d 906, 28 LRA (ns) 401 (1959).

[3] Objectors' arguments include suggestions that it be construed as either a gift in the form of forgiveness of debt or a gift of a chose in action. We fail to see how such characterizations of the will, if accepted, would produce a different result, since the devise would still be specific. In any event, objectors' suggested constructions are contrary to the plain meaning of the language of the will.

property which may be devised. *See,* 94 CJS, Wills 787-88, § 81. Specifically, Mrs. Larsell devised the interest she retained in the Wasco County property *after* the 1963 land sale contract had been signed. *See, Mee v. Cusineau, Executrix,* 213 Ark 61, 209 SW2d 445 (1948). As so interpreted it is a specific devise, and as such is subject to ademption. *See, Skousen, Adm. v. Roelfs,* 209 Or 521, 307 P2d 324, 64 ALR2d 773 (1957).

When a person makes a will which includes a specific devise and subsequently disposes of the property so devised while competent, courts approach the question of ademption by extinction in two different ways. The early English rule, still followed by a minority of American courts, is known as the "intent theory," i.e., the gift is adeemed if the testator so intended. Warren, *The History of Ademption,* 25 Iowa L Rev 290 (1940). However, the great majority of American courts now follow the "identity theory":

> " ' * * * The theory that ademption by extinction depends on the intention of the testator has generally been discarded or forgotten; and the test of ademption is on whether or not the thing which was bequeathed is in existence at testator's death and belongs to him at that time.' Page, Ademption by Extinction * * * 1943 Wisc L Rev 19, 20 * * *." 232 Or at 32-33.

*See, generally,* 6 Page, Wills 266, § 54.15 (Bowe-Parker rev ed 1962); Note, 74 Harv L Rev 741 (1961).

■ Completely different considerations come into play, however, when the testator becomes incompetent and a conservator then deals with the incompetent ward's property in such a way that property which was specifically devised by the ward is no longer in

existence when the ward dies. In such situations a majority of courts hold that no ademption occurs. *Wilmerton v. Wilmerton,* 176 F 896 (7th Cir), *cert denied,* 217 US 606 (1910); *Walsh v. Gillespie,* 338 Mass 278, 154 NE2d 906, 28 LRA (ns) 401 (1959); *In Re Mason's Estate,* 42 Cal Rptr 13, 397 P2d 1005 (1965); *Our Lady of Lourdes v. Vanator,* 91 Idaho 407, 422 P2d 74 (1967); *Lewis v. Hill,* 387 Ill 542, 56 NE2d 619 (1944); *In Re Estate of Bierstedt,* 254 Iowa 772, 119 NW2d 234 (1963); *Grant v. Banks,* 270 NC 473, 155 SE2d 87 (1967); *In Re Cooper,* 95 NJ Eq 210, 123 A 45, 30 ALR 673 (1923); *see, generally,* Annotation, 51 ALR 770 (1927); 6 Page, Wills 271, § 54.18 (Bowe-Parker rev ed 1962); Note, 45 Harv L Rev 710 (1932).[4]

There is a simple rationale for the different ways in which courts approach the subject of ademption depending upon whether the testator is competent or incompetent when the specifically devised property ceases to be part of his estate. In the former situation the identity theory avoids difficult problems of proof concerning the testator's intent; and, in any event, the competent testator can always change his will following changes in the property which he owns. When, however, specifically devised property was removed from a testator's estate during incompetency, application of the identity theory seems unjust. It would result in a disruption of the dispositive scheme of the testator because of fortuitous circumstances beyond his control, and the testator, being incompetent, would

---

[4] When a conservator sells part of his ward's property and expends a portion of the proceeds for the support of the ward, all of the authorities generally recognize that a specific devise of the property sold is adeemed *pro tanto* to the extent of such expenditures.

have no opportunity to change his will to restore or revise his estate plan.

In the competent-testator situation, the most common example of ademption is when the testator sells property which is the subject of a specific devise in an existing will. *See, e.g., Pape v. United States Nat. Bank,* 135 Or 650, 297 P 845 (1931). Thus, if Mrs. Larsell while she was competent had sold her interest in the Wasco County property to her son or anybody else, under the identity theory approved in *Biss v. Parrish,* supra, the devise of her interest in the property would be adeemed.

The same result would be reached if Mrs. Larsell had specifically devised an indebtedness, e.g., her right to receive payments under an installment contract, and then had collected the amount due before her death and while competent. Moreover, it would make no difference if Mrs. Larsell collected a debt then due and owing, or accepted prepayment of a debt not then due; in either situation the thing devised, i.e., the indebtedness, would not be in existence or owned by her at her death. *See, Biss v. Parrish,* supra; *Estate of Haberli,* 41 Wis2d 64, 163 NW2d 168 (1968) (will cancelled debt owed to testatrix; subsequently testatrix cancelled debt as part of a transaction involving conveyance of real property; held, under identity theory gift was adeemed).

■ In the incompetent-testator situation most of the cases also involve sales of property, although by a conservator rather than by the testator. But the rule is not limited to sales; it applies to any act of the conservator that has the result that specifically devised property is not in the ward's estate at the time of death. *See, Wilmerton v. Wilmerton,* supra (conservator with-

drew money from specifically devised bank accounts; held, no ademption); *In Re Cooper,* supra (conservator collected ward's interest as legatee from two estates, the ward having specifically devised said interest in his will; held, no ademption); *Estate of Ehrenfels,* 241 Cal App2d 215, 50 Cal Rptr 358 (1966) (conservator exchanged specifically devised stock in a corporation for shares in a mutual fund; held, no ademption).

In short, it makes no difference whether the conservator sells property, collects a debt, exchanges property, or whatever; the only question is whether the conservator had dealt with the ward's property in such a way that specifically devised property is no longer in the ward's estate.

■ In the case at bar, the property devised by the fifth paragraph of Mrs. Larsell's will was no longer in her estate at the time of her death, having been removed during the period of her incompetency. Under the general rules governing ademption, discussed above, it would thus appear the devise was not adeemed.

Objectors resist this conclusion with a variety of arguments, many of which are implicitly answered by the above discussion. In addition, objectors contend ORS 126.495 applies only when the conservator actively deals with the ward's property in such a way as to remove it from the estate, such as a sale of property at the conservator's initiative. In this case Robert Larsell as conservator passively accepted the contract prepayment from Robert Larsell individually; the initiative was that of Robert Larsell individually.

■ Any accelerated payment of a debt made to a conservator would usually, if not always, be initiated

by the debtor. It would be anomalous to say that the collection of a debt then due initiated by the conservator does not result in ademption (as discussed above), but the act of the conservator in accepting prepayment of a debt not yet due initiated by the debtor does result in ademption. We see no reason to draw such a distinction. We hold that the termination of Mrs. Larsell's interest in the Wasco County property as vendor in exchange for accelerated payment of the purchase price was a transfer within the meaning of ORS 126.495, regardless of who initiated the exchange.

We do not believe this result is inconsistent with the purposes of the statute—to protect the incompetent ward's estate plan from distortion during incompetency. As objectors correctly contend, in the vast majority of cases the statute prevents actions initiated by the conservator from having such an effect. But the purpose of the statute would not be effectuated by limiting its application to only those cases where the conservator takes the first step. Here the conservator participated in a transaction, albeit one initiated by a contract purchaser, that distorted Mrs. Larsell's estate plan. The testamentary intent of an incompetent person should be preserved from intentional or unintentional interference in either case.

■ Objectors next argue that the transaction of December of 1967 did not include a transfer made by the conservator. This is based on the fact that when the land sale contract was executed in 1963, Mrs. Larsell placed a deed in escrow; objectors claim any transfer made in 1967 was made by the escrow agent, not the conservator.

ORS 126.636(3) and (4) require a conservator to perform the duties of a guardian. ORS 126.240 re-

quires a guardian to take possession of all property of substantial value of the ward. Under these provisions, Robert Larsell, as conservator, had possession of Mrs. Larsell's interest in the Wasco County property, i.e., her vendor's interest in the contract of sale. That contract required conveyance of Mrs. Larsell's interest only when the purchase price was paid in full. When the accelerated payment was made in December 1967, a deed was delivered to the buyers. Had the deed not been previously placed in escrow, ORS 126.285 would have required the conservator to execute and deliver a deed to the buyers. To argue that the question of ademption depends upon whether the deed comes from the ward through her conservator, or from the ward through her escrow agent when, at the time of transfer the conservator had possession of the property interest being conveyed and by delivery of the deed is divested of that interest, is to argue form over substance. The transfer of the property specifically devised by Mrs. Larsell's will was made by the conservator within the meaning of ORS 126.495.

■ Objectors argue ORS 126.495 applies only to sales or transfers that are for the benefit of the ward. Everything that a conservator does is for the benefit of the ward in the sense of protecting the ward's economic interests; so we presume objectors' contention is that the sale or transfer must have been essential to raise money for the ward's maintenance and care. We find no support for such a limitation in the language of the statute or in any of the cases cited herein. Indeed, in many of those cases property was sold by the conservator solely to prevent waste, as when the value of stock was declining or the ward's house was unoccupied and could not be rented.

Objectors' final and most substantial argument

centers on the most unique feature of the facts at bar—that the transfer was between Robert Larsell as conservator and Robert Larsell individually, and now it is Robert Larsell who claims that transfer prevents the adcmption of the devise to him under the fifth paragraph of his mother's will. Objectors thus contend that Robert Larsell's actions as conservator place him in a better position than he would otherwise be in.

The only case we have found with facts that come close to this unusual situation is *Buder v. Stocke,* 343 Mo 506, 121 SW2d 852 (1938). In that case the will of Jacob Stocke, Sr., specifically devised his interest in a company that manufactured bricks to his son, Jacob Stocke, Jr. Subsequent to making his will, Jacob Stocke, Sr., became incompetent and Jacob Stocke, Jr., and another person were appointed co-guardians of his estate. During the guardianship some of Jacob Stocke, Sr.'s interest in the company was liquidated. The court held there was no ademption.

"It is further contended that Jacob Stocke, Jr., is estopped to claim this land under the will because of his acts during the guardianship. We do not think there is any merit in this contention because neither he nor his co-guardian had any knowledge of the contents of the will and whatever they did could not, therefore, be held to have been the assumption of a position, either intentionally or negligently, contrary to Jacob Stocke's right to claim what the will gave him * * *." 121 SW2d at 859.

The court also noted there was no prejudice to the residual legatees.

Likewise, in the case at bar there is no evidence that Robert Larsell knew of the provisions of his mother's will during the period of his conservatorship.

All indications are that his 1967 prepayment of the balance due his mother under the 1963 land sale contract was motivated solely by Robert's own business affairs, that is, his need to obtain clear title to the Wasco County property in order to use it to secure a substantial loan he needed because of financial reverses.

In addition, we fail to see any way in which Robert Larsell's actions as conservator prejudiced the residual legatees. If there had been no prepayment of the 1963 land sale contract, Mrs. Larsell's estate would have been about $32,500 smaller and the residual legatees would have received approximately the same share of the estate they are now receiving. If somebody other than Robert Larsell had been appointed Mrs. Larsell's conservator and the land sale contract had been prepaid in the same manner, then it is clear to us that under the majority rule discussed above there would be no ademption. Thus, the residual legatees would receive approximately the same share they are now receiving. We perceive no reason for a different result on the facts at bar.

Affirmed.