Argued and submitted November 24, 1980, affirmed March 9, 1981

In the Matter of the Estate of
Ellen M. Olson, deceased.

DIXON,
*Appellant,*

*v.*

LINDSETH,
*Respondent.*

(No. 9218, CA 16628)

624 P2d 657

Nick Chaivoe, Portland, argued the cause and filed the brief for appellant.

Jeanyse R. Snow, Astoria, argued the cause and filed the brief for respondent.

Before Richardson, Presiding Judge, and Thornton and Buttler, Judges.

BUTTLER, J.

## BUTTLER, J.

Petitioner appeals from an order approving, over his objections, the respondent personal representative's final accounting and proposed distribution of the assets of decedent's estate. Petitioner's objections were: (1) that an *inter vivos* transfer of $3,000 by decedent to her grandson, Lloyd, constituted an ademption by satisfaction, by virtue of which Lloyd is entitled to nothing under the residuary clause of the will, and (2) that a long-term bank note, purchased by decedent's guardian prior to her death with proceeds from the sale of her house, should pass under the will as a "cash" asset. The trial court overruled petitioner's objections. We affirm.

Decedent and her husband executed a joint will on February 15, 1960, which remained in effect after the prior death of decedent's husband. That will provided in part:

"THIRD: On the death of the survivor of us, all of the real and personal property of which such survivor shall die seised or possessed, is given, devised, and bequeathed by us and by such survivor as follows:

"A. To George W. Dixon son of Ellen M. Olson, and Lloyd R. Dixon grandson of Ellen M. Olson, and Loretta J. Banta granddaughter of Ellen M. Olson, to be divided equally among them: one-half (1/2) of whatever cash assets the survivor of us may possess at the time of his or her death. The remaining one-half (1/2) of the said cash assets to be divided equally among Roger Olson and Carl Peterson, nephews of Carl P. Olson.

"B. To Lloyd R. Dixon, grandson of Ellen M. Olson, all the rest, residue and remainder of the estate of the survivor of us."

The parties agree that at the time the will was executed decedent and her husband wished their house and furnishings to go to their grandson, Lloyd, and their cash assets to be divided among a group comprised of their children, grandchildren and nephews, including both petitioner and Lloyd. To this end, decedent's will, as quoted above, provided for specific bequests of her "cash assets," petitioner and Lloyd each taking a one-sixth share; the residuary clause, without mentioning, but necessarily including, the house and furnishings, left "all of the rest, residue and remainder of the estate" to Lloyd. If decedent

had owned the home and furnishings at the time of her death, there would be no dispute; but she did not.

In 1972, after her husband's death, decedent was adjudged incompetent and respondent was appointed guardian of her person and estate. Shortly thereafter, decedent moved into a nursing home and, in May, 1974, after decedent refused to allow the house to be rented, the guardian sold the house and furnishings, netting $15,387.72. In July, 1974, the guardian invested $10,000 of the proceeds from the sale in a long-term bank note due in 1989. From some of the remaining proceeds from the sale, decedent requested her guardian to make gifts of $3,000 to Lloyd and $500 to petitioner. The guardian sought and obtained court approval to make the gifts. In support of her petition for such authority, the guardian filed an affidavit which stated in pertinent part:

> "I further depose and say that the Ward, my aunt, has advised me that she wishes to make an immediate gift to her grandson, Lloyd Dixon, in the sum of $3,000, and a gift to her son, George Dixon in the amount of $500.00. I further depose and say that she has advised me that she and my uncle, at the time he was living, had originally intended to leave the house to her grandson, Lloyd Dixon. However, when she could no longer live in it and she would not permit it to be rented, it had to be sold and she feels that she definitely wants to leave this sum of money to Lloyd Dixon at this time.

> "I further depose and say that she also wishes to give her son, George Dixon, the sum of $500.00 at this time.

> "I further depose and say that the Ward, Ellen Dixon Olson, has advised me that she wishes to make these gifts, that she has the donative intent and wants to make the gifts at this time."[1]

Decedent died on October 21, 1978, leaving a net estate of $4,758.93 in cash and the $10,000 long-term bank note, the testamentary character of which is in dispute, but no real property. Respondent, as personal representative, accounted for the bank note as a non-cash asset within the meaning of the will, which should be distributed to Lloyd as

---

[1] The affidavit states that the ward was lucid at the time, which fact is not in dispute.

residuary legatee. As noted above, petitioner's objections to that final accounting were overruled.

■     Petitioner first contends that the $3,000 *inter vivos* transfer to Lloyd was not a gift, but constituted an ademption by satisfaction. While no Oregon cases deal with the doctrine of ademption by satisfaction, it is described in the treatise, 6 Bowe-Parker, Page on Wills (Rev ed 1962), as follows:

> "In modern law, the term ademption has two distinct meanings. It is used with reference to the act of the testator in paying to the legatee, in the lifetime of the testator, a legacy which the testator has given to the legatee by will, or in satisfying such legacy by giving, in place thereof, something of value. [Footnote omitted.] This is sometimes spoken of as ademption by satisfaction. [Footnote omitted.] * * * *Id.,* at 241, § 54.1.
>
> "* * * * *
>
> "Whether a gift to a legatee operates as an ademption by satisfaction or not, depends upon the actual intention of the testator which he has at the time that he makes the gift, and which is communicated to the legatee, or would be inferred by the legatee from the circumstances under which the gift is made, if he acted as a reasonable man. [Footnote omitted.] The doctrine of ademption by satisfaction is intended, primarily, to give effect to the intention of the testator [Footnote omitted]; and not to secure the interests of other beneficiaries as against the wishes of the testator. [Footnote omitted.] If testator indicates his intention to make a gift to the legatee in addition to the legacy, full effect will be given to such intention, and the legacy will not be adeemed. [Footnote omitted.] * * * *Id.,* at 280-81, § 54.24.
>
> "* * * * *
>
> "If testator's intention does not appear on the face of the will, the burden of proof is on the party who claims that a payment operates as an ademption. [Footnote omitted.] * * *" *Id.,* at 282, § 54.26.

Petitioner contends that the *inter vivos* gift to Lloyd was made with the intent of making up for the loss of the house which was sold, and which he would not receive under the will, and was intended to be in satisfaction of that devise. In seeking to sustain his burden of proof, he relies on the guardian's affidavit submitted in support of her petition for authority to make the gifts, contending

that it shows that defendant *apparently* considered the $3,000 gift, along with the probable increase in Lloyd's share of cash resulting from the sale of the house, to be the fair value of the devise. Although the argument is a reasonable one (assuming that ademption applies to residuary devises[2]), we think it attributes substantially more sophistication to the gift than can be gleaned from the affidavit. Rather, we read the affidavit as indicating decedent's intention to make a gift to Lloyd *at that time* out of the proceeds of the sale of the house, which he would receive ultimately if any remained at the time of her death. According to petitioner, the donative intent evidenced by the affidavit should be read to mean only that the two gifts were not intended as advancements. Although the affidavit is not clear on this point, we think it is at least as likely that she wanted to negate the possibility that the gifts might be contended to be loans.

Given the different inferences to which the affidavit is subject, the evidence is in a state of equipoise, and petitioner has not sustained his burden. Furthermore, decedent's granddaughter testified at the hearing that decedent had the idea or understanding that Lloyd would still get the money from the property sale. We hold that petitioner failed to carry his burden of proof on the ademption issue, if there is one.

■ Petitioner's second contention is that although the long-term bank note is not a "cash asset," as such, (and we agree that it is not because, like any other security, it would be necessary to sell it to obtain cash), the note was obtained by using cash. The contention is that a guardian may not convert the character of her ward's property where it affects the ward's testamentary plan. He relies on *Larsell v. Clarke,* 9 Or App 61, 495 P2d 57, *affirmed* 263 Or 620, 503 P2d 500 (1972), which may be said to support that proposition generally, although that case involved a specific devise. The contention, however, misses a link in the chain of events here: the cash was derived from the sale of

---

[2] Neither party addresses this question, apparently because they agree that the house was the only asset decedent intended to pass under the residuary clause, thereby making the devise the functional equivalent of a specific one. Although that premise is questionable, we do not address it. *See* ORS 112.385(6).

the real property by the guardian, which, under *Larsell,* would require that the cash be treated as real property. That the cash was reconverted to a non-cash asset, under that theory, would be of no consequence.

Because the bank note may be traced to, and represents most of the proceeds from, the sale of the house, and, in any event is not a "cash asset,"[3] it should be distributed to Lloyd under the residuary clause of the will as the trial court directed in the decree of final distribution.

Affirmed.

---

[3] *See Estate of Chamberlain,* 56 Cal App 2d 458, 132 P2d 488 (1942).